30 A.3d 1061

REZEM FAMILY ASSOCIATES, LP, PLAINTIFF–APPEL-
LANT/CROSS–RESPONDENT, v. THE BOROUGH OF MILL-
STONE, RAY HECK, IN HIS OFFICIAL CAPACITY, BOROUGH
OF MILLSTONE COUNCIL, WILLIAM POCH, IN HIS OFFI-
CIAL CAPACITY, BOROUGH OF MILLSTONE PLANNING
BOARD, KEITH DORSCHNER, IN HIS OFFICIAL CAPACITY,
SHIRLEY M. BISHOP, JAMES DEMURO, IN HIS OFFICIAL
CAPACITY, DEFENDANTS–RESPONDENTS/CROSS–APPEL-
LANTS, AND CARTER VAN DYKE, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES, AND CARTER VAN DYKE ASSOCI-
ATES, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 1, 2010—Decided April 15, 2011.

Before Judges GILROY, ASHRAFI and NUGENT.

*Stuart J. Lieberman* argued the cause for appellant/cross-respondent (*Lieberman & Blecher, P.C.,* attorneys; *Mr. Lieberman,* of counsel and on the brief; *Michael G. Sinkevich, Jr.,* on the brief).

*David R. Strickler* argued the cause for respondents/cross-appellants Borough of Millstone, Ray Heck, Borough of Millstone Council, William Poch, Borough of Millstone Planning Board, Keith Dorschner, Shirley M. Bishop and James DeMuro (*Norris McLaughlin & Marcus,* attorneys; *Stephen M. Offen,* of counsel; *Mr. Strickler* and *Erin T. Welsh,* on the brief).

*David Parker Weeks* argued the cause for respondents Carter Van Dyke and Carter Van Dyke Associates (*Ruprecht, Hart & Weeks, LLP,* attorneys; *Mr. Weeks,* of counsel and on the brief; *Matthew E. Blackman,* on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Plaintiff Rezem Family Associates, LP (Rezem or plaintiff) appeals from an order dismissing its civil rights complaint under *Rule* 4:6–2(e) for failure to state a claim upon which relief can be granted. Several defendants cross-appeal from denial of their application for attorney's fees as prevailing parties. We affirm.

The primary issue on appeal is whether a plaintiff must initially pursue administrative and judicial remedies, and obtain a final ruling on its land use claims, before it can pursue a cause of action for alleged violation of its substantive due process rights. We hold that a substantive due process claim in a land use dispute requires both governmental misconduct that "shocks the conscience" and exhaustion of remedies available under our land use law.

I.

Rezem is the former owner of sixty-seven acres of vacant land in Millstone, Somerset County. It filed a complaint in March 2009

alleging civil rights violations and other causes of action against the Borough of Millstone and several other defendants involved in land use planning and zoning decisions of the Borough.[1] The essential allegation of Rezem's complaint is that:

the Borough of Millstone and its various agents have violated specific civil rights of the Plaintiff by successfully attempting to prevent the Plaintiff from developing its property through a variety of false statements, fraudulent claims, and misstatements of fact .... in a concerted effort to keep Plaintiff's property as open space in order to satisfy the Defendants' desire to retain what they claim to be the "historic" nature of the property.

The eight counts of plaintiff's complaint alleged: (count one) substantive due process violations under 42 *U.S.C.* § 1983; (count two) § 1983 conspiracy; (count three) temporary regulatory takings; (count four) substantive due process violations under the New Jersey Civil Rights Act, *N.J.S.A.* 10:6–1 and –2; (count five) negligence by the Van Dyke defendants; (count six) intentional tort by the Van Dyke defendants; (count seven) conspiracy; and (count eight) civil racketeering in violation of the New Jersey Civil Racketeer Influenced and Corrupt Organizations Act (NJRICO), *N.J.S.A.* 2C:41–1 to –6.

In June 2009, all defendants moved to dismiss the complaint under *Rule* 4:6–2(e) for failure to state a claim upon which relief can be granted. The municipal defendants also sought reimbursement of their attorney's fees and litigation expenses pursuant to 42 *U.S.C.* § 1988. Following oral argument, the trial court issued a letter opinion and an order dated December 7, 2009, granting defendants' motions to dismiss the complaint in its entirety and

---

[1] Defendants can be categorized in two groups. One is comprised of the Borough of Millstone, Ray Heck in his official capacity as mayor, the Borough of Millstone Council, William Poch in his official capacity as president of the Borough Council, the Borough of Millstone Planning Board, Keith Dorschner in his official capacity as chairman of the Planning Board, Shirley M. Bishop, who was apparently a land-use consultant to the Borough Council, and James DeMuro, in his official capacity as municipal engineer (collectively "the municipal defendants"). The second group consists of Carter Van Dyke, individually and in his official capacity as planning consultant, and Carter Van Dyke Associates, a business entity (collectively "the Van Dyke defendants").

denying the municipal defendants' motion for attorney's fees and expenses.

Plaintiff and the municipal defendants filed notices of appeal. Plaintiff seeks reinstatement of six of the eight counts of its complaint.[2] The municipal defendants seek attorney's fees and expenses. Because Rezem's claims were dismissed under *Rule* 4:6–2(e), we will assume for purposes of the appeal that it can prove the facts alleged in its complaint. *See Craig v. Suburban Cablevision, Inc.,* 140 *N.J.* 623, 625–26, 660 *A.*2d 505 (1995).

Rezem states that its sixty-seven acre tract in Millstone had been owned by members of the Rezem family and related entities for eighty years. In 1997, Somerset County constructed the Amwell Road bypass and an adjoining roadway through the property, dividing it into three sections. In 1999, plaintiff approached Borough officials with proposals by two potential buyers, Exxon and Haynes Oil Company, for development of a new gas station at the bypass intersection. Borough planners informed Rezem and the potential developers that no development of any kind would be approved for the property until the Borough completed revision of its Master Plan.

In 2002, when the property was zoned as "light industrial," the former Borough planner prepared a map showing a "planned village development" that included Rezem's land. The plan would have permitted construction of 250 single-family homes and condominiums on Rezem's land, as well as a commercial site and twenty-eight acres of open recreational space. The Planning Board refused to support a zoning change in accordance with the 2002 concept presented by its own planner.

In November 2002, a "builder's remedy" lawsuit was filed against the Borough under the *Mt. Laurel*[3] doctrine alleging that

---

[2] Plaintiff's appeal does not seek reinstatement of count three alleging regulatory taking of its land and count eight alleging NJRICO violations.

[3] *See S. Burlington County N.A.A.C.P. v. Twp. of Mt. Laurel,* 67 *N.J.* 151, 336 *A.*2d 713, *cert. denied,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975); *S.*

the Borough failed to meet its State constitutional obligation to provide zoning for affordable housing. Rezem was joined as a party in the lawsuit, and the case was transferred to the State Council on Affordable Housing (COAH) for mediation. The *Mt. Laurel* litigation remained unresolved at the time Rezem filed its complaint in this litigation.

The Borough also filed an application before COAH for substantive certification of its *Mt. Laurel* plan. The plan included the Rezem property as a site where a substantial number of affordable housing units could be developed. According to Rezem's complaint, the Borough's COAH application contained "a variety of false statements and misstatements regarding [the subject] property."

Plaintiff's complaint further alleges that from 2002 through 2004 Borough planners created five separate development plans for Rezem's property, but the municipal defendants refused to change the zoning to make any of the plans feasible.

In 2004, a sixth development plan, known as the 2004 Vision Plan, was prepared by defendant Carter Van Dyke, the new Borough planner. According to Rezem, this Vision Plan contained false statements and damaging claims regarding Rezem's property. For example, the Vision Plan included a map depicting the property as containing approximately fifty percent wetlands, when in fact less than five percent of the property is wetlands. Rezem appeared before the Planning Board and demanded a written retraction of the Van Dyke defendants' map, but the Planning Board took no action.

In addition, the Vision Plan included a map referred to as "Historical Resources" that depicted a Revolutionary War "hospital" and encampment sites as having been located on the Rezem property. Upon inquiry, Carter Van Dyke's assistant informed Rezem that this map was inaccurate. At a Planning Board

*Burlington County N.A.A.C.P. v. Twp. of Mt. Laurel,* 92 *N.J.* 158, 456 A.2d 390 (1983).

meeting held shortly after the publication of the Vision Plan, Rezem "submitted and read a formal response . . . that informed the Borough that these maps were in fact not true, and were a fictitious creation of the Borough Planner." The municipal defendants failed to correct or retract the maps.

Similarly, at an August 2004 COAH meeting, defendant Carter Van Dyke stated that during the construction of the bypass roadway in 1997, historical artifacts were found on the Rezem property. Rezem contacted the Somerset County engineer in charge of the bypass construction, and that person denied any historical artifacts had been found.

In 2005, the Borough submitted another COAH application, which contained false statements about future sewer access for Rezem's property. Specifically, the COAH application stated the Borough and Hillsborough Township had entered into a joint agreement to update the Borough's sewer service area plan. Similar representations were also made in the Borough's 2007 COAH application. In fact, the Borough's attorney informed Rezem that Hillsborough was demanding a substantial hook-up fee and that any proposal for sewer service was not going forward. Moreover, the director of the municipal utility authority in Hillsborough stated to Rezem in late 2007 that he had not even discussed sewer plans with Millstone officials.

Throughout this time period, several developers entered into contingent contracts with Rezem to buy the property. All of these contracts were terminated because of the zoning obstacles imposed by defendants. In October 2000, Rezem received an offer of $450,000 for 2.5 acres of its land from Haynes Motor Fuels. Haynes later terminated the contract when it was unable to obtain amendment of a zoning ordinance to build a gas station.

In July 2002, a major residential developer, Toll Brothers, entered into a contract to purchase the entire property for $9,250,000. In September 2002, Toll Brothers made a formal presentation to the Planning Board for development of the property. However, "[a]s a result of the Planning Board meeting and

based on statements from the Planning Board indicating that there was no way that it would act reasonably, Toll Brothers terminated its contract" with Rezem in October 2002.

In December 2002, Rezem entered into a contract with Calton Homes, a division of CENTEX Corporation, under which CENTEX would purchase the entire tract for $17,290,000 with intent to develop 266 residential units. In March 2003, Rezem received a letter from CENTEX indicating that municipal officials had changed its proposal and reduced the number of residential units that could be developed. Some months later, CENTEX terminated the contract because the "[b]uyer will be unable to perform given the present political realities of Millstone Borough."

In July 2005, Rezem entered into a contract with a division of Hovnanian, another residential developer, for the sale of 16.8 acres for $8,494,000. That contract was terminated in September 2006, the termination letter suggesting that a major issue was that "timely completion of the sewer infrastructure" could not be ensured.

In the latter part of the decade, with the Borough's approval and assistance, Rezem attempted to sell its land to the New Jersey Department of Environmental Protection Green Acres Program ("Green Acres") for open space preservation. In December 2006, Borough attorneys represented to Rezem that if it would agree to a change in zoning from light industrial to a mixed-use, planned village development, Green Acres would appraise the property and make an offer at fair market value. Rezem agreed to the zoning change and a mediation agreement with the Borough was signed in August 2007. In October 2007, the Borough Council enacted a zoning change on Rezem's property, by which 3.8 acres were zoned mixed-use retail, 17 acres residential, and 45 acres open space.

At a meeting several months later with Green Acres officials, Rezem learned that Green Acres never intended to purchase Rezem's entire tract, and in fact never had the financial ability to do so. Rather, Green Acres anticipated that substantial financing

would come from other agencies and the Borough itself. Following that meeting, Green Acres never appraised the property and never made an offer to purchase any portion of it. Rezem alleges it "was deceived into agreeing to a zoning change on [the] property as a direct result of fictitious misrepresentations made by the Borough of Millstone."

Sometime thereafter, Rezem presented two written zoning options to the Borough for amended zoning of its property, but it received no response.

On January 26, 2009, Rezem signed an agreement to sell the entire tract to Somerset County for $6,850,000. Somerset County formally appraised as "worthless" the forty-five acres that were rezoned for open space. Rezem states it was compelled to accept the low offer from Somerset County; no developers would consider purchasing the property because of defendants' actions over the previous nine years in thwarting its development.

Rezem brought this suit to recover compensatory damages based on differences between the value of contingent contracts it had entered with potential developers of the property and the amount it received from Somerset County. It also sought punitive damages and attorney's fees.

## II.

In considering a motion to dismiss under *Rule* 4:6–2(e), courts search the allegations of the pleading in depth and with liberality to determine whether a cause of action is " 'suggested' by the facts." *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989) (quoting *Velantzas v. Colgate–Palmolive Co.*, 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988)). They must "ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." *Ibid.* (quoting *Di Cristofaro v. Laurel Grove Mem. Park*, 43 *N.J.Super.* 244, 252, 128 *A.*2d 281 (App.Div.1957)). A pleading should be dismissed if it states no basis for relief and discovery would not provide one.

*Camden County Energy Recovery Assoc., L.P. v. N.J. Dep't of Envtl. Prot.*, 320 *N.J.Super.* 59, 64, 726 *A.*2d 968 (App.Div.1999), *aff'd,* 170 *N.J.* 246, 786 *A.*2d 105 (2001).

On appeal, we apply a plenary standard of review from a trial court's decision to grant a motion to dismiss pursuant to *Rule* 4:6–2(e). *Sickles v. Cabot Corp.,* 379 *N.J.Super.* 100, 106, 877 *A.*2d 267 (App.Div.)., *certif. denied,* 185 *N.J.* 297, 884 *A.*2d 1267 (2005). We owe no deference to the trial court's conclusions.

In counts one, two, and four of its complaint, Rezem alleges that defendants violated its substantive due process rights by interfering with its ability to develop and sell its land. As explained by the New Jersey Supreme Court, claims brought under 42 *U.S.C.* § 1983 require proof of two key components. "[T]he first task ... is to identify the state actor, 'the person acting under color of law,' that has caused the alleged deprivation." *Rivkin v. Dover Twp. Rent Leveling Bd.,* 143 *N.J.* 352, 363, 671 *A.*2d 567 (quoting *Monell v. New York City Dep't of Social Servs.,* 436 *U.S.* 658, 691, 98 *S.Ct.* 2018, 2036, 56 *L.Ed.*2d 611, 636 (1978)), *cert. denied,* 519 *U.S.* 911, 117 *S.Ct.* 275, 136 *L.Ed.*2d 198 (1996). Identification of the "state actors" is not an issue in this appeal.

"The second task is to identify a 'right, privilege or immunity' secured to the claimant by the Constitution or other federal laws of the United States." *Ibid.* (quoting 42 *U.S.C.* § 1983). As this second component indicates, § 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred.' " *Ibid.* (quoting *Baker v. McCollan,* 443 *U.S.* 137, 144, 99 *S.Ct.* 2689, 2694, 61 *L.Ed.*2d 433, 442 (1979)). For example, plaintiffs can bring § 1983 claims alleging that their substantive due process rights under the Fourteenth Amendment to the United States Constitution have been violated, as Rezem has done in this case.

To allege civil rights violations in a land use context, however, a substantive due process claim requires evidence of

governmental action that "shocks the conscience." *Id.* at 366, 671 *A.*2d 567; *accord United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 *F.*3d 392, 401–02 (3d Cir.2003). The reason for this high standard of proof is to prevent zoning appeals from being converted into civil rights claims. *United Artists, supra,* 316 *F.*3d at 402.

With respect to the New Jersey Civil Rights Act, *N.J.S.A.* 10:6–2, the parties appear to agree that the elements of a substantive due process claim are the same as under 42 *U.S.C.* § 1983. The New Jersey statute was modeled after § 1983. *See K.J. v. Div. of Youth and Family Servs.,* 363 *F.Supp.*2d 728, 746 (D.N.J.2005). In relevant part, it provides:

> any person who has been deprived of any substantive due process ... rights, privileges, or immunities secured by the Constitution or laws of the United States, or ... of this State ... by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [*N.J.S.A.* 10:6–2c.]

We see no reason to apply different elements to a cause of action brought under the State statute from those the New Jersey Supreme Court in *Rivkin* found were applicable under federal civil rights legislation. Therefore, for a claim of substantive due process violation under *N.J.S.A.* 10:6–2c arising from land use decisions, a plaintiff must show that the official action "shocks the conscience."

In summarizing the factual allegations of the complaint, the trial court succinctly characterized plaintiff's claims of governmental misconduct as: a) down zoning of the property with a false promise that Green Acres would appraise and purchase the land, b) knowingly using false historic information, c) vastly overstating the amount of wetlands on the property, d) fabricating information provided to COAH to avoid builders remedy lawsuits, and e) misrepresenting the availability of sewer service. The trial court concluded that, if plaintiff is able to prove its factual allegations at trial, a rational jury could find that the conduct alleged "shocks the conscience."

Defendants argue this conclusion was erroneous, that the allegations of plaintiff's complaint do not demonstrate egregious government misconduct that would "shock the conscience" in a constitutional sense. Keeping in mind the highly deferential standard of review at this stage of the litigation, *see Printing Mart–Morristown, supra,* 116 *N.J.* at 746, 563 *A.*2d 31, we need not address this argument of defendants.

■ We agree with the trial court's additional conclusion that Rezem's complaint must be dismissed because it contains no allegation that Rezem, or potential developers, exhausted available administrative and judicial remedies, or sought a final decision on any application for a zoning change or development of the land, before plaintiff filed this civil rights lawsuit.

In *41 Maple Associates v. Common Council of the City of Summit,* 276 *N.J.Super.* 613, 619–20, 648 *A.*2d 732 (App.Div.1994), we held that a § 1983 claim was correctly dismissed because it was not ripe for adjudication without a showing that the plaintiffs had attempted to remedy the deprivation of their land use rights through available administrative and judicial proceedings. In that case, the plaintiffs received a variance and site plan approval from the city's planning board to build an addition to their property. Municipal officials, however, asserted that no building permit would be issued because the city intended to challenge the variance and site plan approval through litigation. The plaintiffs did not apply formally for a building permit but instead sued alleging civil rights violations. *Id.* at 615–17, 648 *A.*2d 732. In affirming dismissal of the complaint, we explained that the plaintiffs could have challenged the construction official's failure to review their application and issue a building permit by pursuing local remedies and filing an action in lieu of prerogative writs in the Superior Court under *Rule* 4:69. *Id.* at 618, 648 *A.*2d 732. We further stated: "The alleged improper moratorium or municipal antipathy to the development could not have improperly deprived plaintiffs ... of a mere expectation which had not ripened into a property

right by the issuance or improper denial of an appropriate permit." *Id.* at 619, 648 *A.*2d 732.

Likewise in *OFP, L.L.C. v. State*, 395 *N.J.Super.* 571, 590, 930 *A.*2d 442 (App.Div.2007), *aff'd o.b.*, 197 *N.J.* 418, 963 *A.*2d 810 (2008), we held that a landowner could not bring a constitutional challenge alleging a regulatory taking of its property until it had exhausted available remedies and permitted the agency responsible for the regulation to issue a final ruling on a potential waiver of the regulations for the plaintiff's property. *See also House of Fire Christian Church v. Zoning Bd. Of Adj. of City of Clifton*, 379 *N.J.Super.* 526, 547–48, 879 *A.*2d 1212 (App.Div.2005) (church's claim that city's land use decisions violated a federal statute, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 *U.S.C.A.* §§ 2000cc to 2000cc–5, was not ripe for adjudication until church applied to the local zoning board for relief and obtained a ruling).

Rezem argues that *41 Maple Associates* and *OFP* do not apply to its complaint because those cases involved claims of taking of property without just compensation. It argues that exhaustion of administrative remedies is not required when the allegations of a complaint are that the official conduct "shocks the conscience," thus establishing a substantive due process claim for damages.

We disagree with Rezem's argument. We stated in *41 Maple Associates, supra,* that the ripeness principle "also defeats both of plaintiffs' substantive claims: their claim for inverse condemnation . . . and *their claim for deprivation of their civil rights under 42 U.S.C.A. § 1983.*" 276 *N.J.Super.* at 619, 648 *A.*2d 732 (emphasis added). Also, nothing we stated in *OFP* is contrary to application of the same principle of ripeness to a claim arising under the due process clause of the Fourteenth Amendment.

The United State Supreme Court has applied finality and ripeness principles to support dismissal of a claim "even if viewed as a question of due process" under the Fourteenth Amendment rather than a taking of the land without just compensation in violation of the Fifth Amendment. *Williamson County Reg'l*

*Planning Comm'n v. Hamilton Bank*, 473 *U.S.* 172, 199–200, 105 *S.Ct.* 3108, 3123, 87 *L.Ed.*2d 126, 147 (1985). Other federal courts have confirmed similar principles of finality and ripeness in land use cases. *See, e.g., Murphy v. New Milford Zoning Comm'n*, 402 *F.*3d 342, 349–50 (2d Cir.2005); *Lauderbaugh v. Hopewell Twp.*, 319 *F.*3d 568, 574 (3d Cir.2003); *Sameric Corp. v. Philadelphia*, 142 *F.*3d 582, 596–98 (3d Cir.1998); *Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 *F.*2d 1285, 1292 (3d Cir.), *cert. denied*, 510 *U.S.* 914, 114 *S.Ct.* 304, 126 *L.Ed.*2d 252 (1993).

■ Whether we describe the applicable principle as exhaustion of remedies, ripeness of the claim, or the "finality rule," as defendants characterize it, we hold that plaintiff's substantive due process claims in a land use case require a showing either that plaintiff has obtained a final decision under available state procedures or that such an attempt would have been futile. *See Murphy, supra*, 402 *F.*3d at 349; *Lauderbaugh, supra*, 319 *F.*3d at 574–75.

Rezem seeks a contrary conclusion based on a "negative implication" it draws from the opinion of the New Jersey Supreme Court in *Rivkin, supra*, 143 *N.J.* 352, 671 *A.*2d 567. In *Rivkin*, the municipal rent leveling board had denied the plaintiff-landlord's application to disqualify a tenant-board-member who was openly hostile to the plaintiff and had described his role on the board as an advocate for tenants. In affirming dismissal of the plaintiff's § 1983 claim of civil rights violation by the board, the New Jersey Supreme Court stated:

> We hold that, absent egregious misconduct that shocks the conscience in the sense of violating the civilized norms of governance, or invidious discrimination on the part of a board member or board, so long as the State provides a plain, adequate and timely remedy to redress irregularities in the proceedings, a party aggrieved by the determinations of a municipal rent leveling board does not have a claim for relief under 42 *U.S.C.* § 1983.
>
> [*Id.* at 358, 671 *A.*2d 567.]

The Court also stated "[w]hen … a government agency has engaged in egregious misconduct rising to the level of a substantive due process violation or has invidiously discriminated against

a member of society, a § 1983 violation occurs 'regardless of the fairness of the procedures used to implement' the abuse." *Id.* at 384, 671 *A.*2d 567 (quoting *Daniels v. Williams*, 474 *U.S.* 327, 331, 106 *S.Ct.* 662, 665, 88 *L.Ed.*2d 662, 668 (1986)).

In the same context, however, the Court noted that invidious discrimination, such as a claim of racial discrimination, may also be alleged under other statutes besides § 1983. The Court distinguished such claims from "disputes about the regularity of state procedures." *Id.* at 384–85, 671 *A.*2d 567. Because in *Rivkin* the plaintiff had in fact sought judicial review of the municipal board's ruling and ultimately prevailed with respect to the underlying dispute about a rent increase, 143 *N.J.* at 359–60, 671 *A.*2d 567, the Court had no occasion to consider applicability of the ripeness or finality principle to the plaintiff's claim. The quoted statements from which plaintiff draws a "negative" inference were addressing whether the plaintiff in *Rivkin* had any claim at all under § 1983 for compensatory damages and under 42 *U.S.C.* § 1988 for attorney's fees, not whether a plaintiff must first exhaust administrative and judicial remedies.

Here, Rezem and its prospective buyers never pursued municipal or prerogative writs remedies available under our law. They did not apply to the borough council for a zoning change, or to the planning board or the board of adjustment for site plan approval or variances to facilitate development of the property. Potential developers cancelled their contracts when it appeared unlikely that a zoning change would be granted or that an application for development would be promptly approved. The alleged substantive due process violations might have been remedied through appropriate applications, followed by actions in lieu of prerogative writs to challenge any unfavorable local decisions. Nothing in plaintiff's complaint demonstrates that judicial remedies to address the recalcitrance of Borough officials would have been futile. In fact, at oral argument before us, Rezem conceded that defendants' alleged wrongdoing might have been remedied by means of prerogative writs actions under *Rule* 4:69.

In the absence of any attempt to make use of available procedures and remedies, Rezem's complaint improperly converts a zoning case into civil rights litigation. We reject that effort and affirm the trial court's dismissal of Rezem's § 1983 and State civil rights claims for lack of ripeness or of finality of defendants' zoning and planning decisions.

## III.

In count five of the complaint, Rezem alleges that the Van Dyke defendants were negligent in preparing inaccurate maps that depicted wetlands and historical activity on Rezem's land. In dismissing this claim, the trial court correctly held that the Van Dyke defendants owed no duty to Rezem to avoid negligent preparation of planning maps. The court noted that Rezem could not allege it had reasonably relied on the Van Dyke defendants' work product.

Rezem argues that the law of negligence does not require a plaintiff's reliance on a defendant's acts. In the alternative, it argues that it did in fact rely on the actions of the Van Dyke defendants. We reject these arguments.

In the negligence context, "a duty is an obligation imposed by law requiring one party to conform to a particular standard of conduct toward another." *Acuna v. Turkish*, 192 *N.J.* 399, 413, 930 *A.*2d 416 (2007), *cert. denied*, 555 *U.S.* 813, 129 *S.Ct.* 44, 172 *L.Ed.*2d 22 (2008). Whether a duty of care exists with respect to a particular plaintiff "is generally a matter for a court to decide." *Ibid.* The court analyzes public policy and fairness, examining such factors as "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id.* at 414, 930 *A.*2d 416 (quoting *Carvalho v. Toll Bros. & Developers*, 143 *N.J.* 565, 573, 675 *A.*2d 209 (1996)).

Rezem urges a broad interpretation of duty, asserting that in *Carvalho*, the New Jersey Supreme Court held that a duty of care

existed by analyzing foreseeability of harm and fairness. It asserts that the Court did not mention reliance in imposing a duty of care upon the alleged wrongdoer.

In *Carvalho, supra,* 143 *N.J.* at 577–78, 675 *A.*2d 209, the Court focused on the responsibilities of the defendant engineers and work-site inspector in assuring worker safety at a construction site. The worker in that case had no recourse but to perform his job unless the engineer or inspector caused a work stoppage because of site conditions. Reliance of the worker upon the care exercised by the engineer and inspector was inherent in the manner of performing the job. In contrast, Rezem's own actions in challenging the accuracy of the Van Dyke defendants' maps and statements indicate that it did not detrimentally rely on anything they prepared in pursuing its development interests.

In *Zielinski v. Professional Appraisal Associates,* 326 *N.J.Super.* 219, 224, 740 *A.*2d 1131 (App.Div.1999), we recounted a series of cases in which New Jersey courts have "imposed a duty of care upon a professional in favor of persons who did not engage the professional." We noted "in all of these cases a factual issue was presented as to whether the injured party relied upon the representation of the professional." *Id.* at 226, 740 *A.*2d 1131. *See, e.g., Petrillo v. Bachenberg,* 139 *N.J.* 472, 483–84, 655 *A.*2d 1354 (1995) (proof of reasonable reliance required to impose a duty of care upon an attorney in favor of a non-client).

Under our established precedents, the Van Dyke defendants could not be held liable to Rezem for negligent preparation of the planning maps and other negligent conduct because they had no contractual relationship with Rezem and a duty is not imposed by law where Rezem did not rely on their work product. With respect to Rezem's alternative argument that it did in fact rely on the Van Dyke defendants' professional work in advising municipal officials, the complaint clearly alleges that Rezem did not accept the accuracy of the maps and attempted to have them retracted. We conclude the trial court correctly dismissed count five of Rezem's complaint.

■ In count six, Rezem alleges the Van Dyke defendants committed an unspecified intentional tort by preparing the inaccurate maps and by making false public statements about historical artifacts being found on the property. Rezem argues that the facts alleged in its complaint give rise to a claim for common law fraud.[4]

■ A claim for common law fraud requires proof of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 610, 691 *A.*2d 350 (1997). Again, because Rezem's complaint fails to allege facts showing that it detrimentally relied on the alleged misrepresentations made by the Van Dyke defendants, it does not state a claim for fraud. The trial court correctly dismissed count six of the complaint.

Finally, with respect to count seven, because a civil conspiracy requires "an underlying wrong," *see Banco Popular N. Am. v. Gandi,* 184 *N.J.* 161, 177–78, 876 *A.*2d 253 (2005) (quoting *Morgan v. Union County Bd. of Chosen Freeholders,* 268 *N.J.Super.* 337, 364, 633 *A.*2d 985 (App.Div.1993), *certif. denied,* 135 *N.J.* 468, 640 *A.*2d 850 (1994)), the trial court also correctly dismissed the conspiracy count.

## IV.

■ In their cross-appeal, the municipal defendants contend that the trial court erroneously denied their claims for attorney's

---

[4] While intentional false statements to buyers could potentially be the basis for a claim for tortious interference with prospective economic interest or relations, *see MacDougall v. Weichert,* 144 *N.J.* 380, 403–04, 677 *A.*2d 162 (1996); *Printing Mart–Morristown, supra,* 116 *N.J.* at 751–52, 563 *A.*2d 31, Rezem neither alleged in its complaint nor argues on appeal that any defendants are liable for such a cause of action.

fees and litigation expenses under 42 *U.S.C.* § 1988. In relevant part, § 1988 provides that, in an action under 42 *U.S.C.* § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." By the express terms of the statute, the trial court's decision to grant or deny fees is reviewed under an abuse of discretion standard. *See Barnes Foundation v. Twp. of Lower Merion,* 242 *F.*3d 151, 157 (3d Cir.2001).

The federal courts have applied different criteria in awarding attorney's fees under the statute depending on whether a plaintiff or a defendant prevails. "[W]hile prevailing plaintiffs 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust,' a prevailing defendant is entitled to attorney's fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation.'" *Id.* at 158; *see also Christiansburg Garment Co. v. EEOC,* 434 *U.S.* 412, 416–17, 421, 98 *S.Ct.* 694, 698, 700, 54 *L.Ed.*2d 648, 653–54, 657 (1978) (different criteria for fee award to prevailing plaintiff or defendant under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e–5(k)).

The trial court here reasoned that some of Rezem's claims were stronger than others, and that it was "only upon a careful review of the controlling law" that it determined the complaint must be dismissed. We find no basis to disturb the trial court's discretionary decision to deny attorney's fees and other expenses to the municipal defendants. Additional arguments on the cross-appeal do not warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E).

Affirmed.