**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4417-19

SUMAN GARLAPATI and
3R BIO PHARMA, LLC,

      Plaintiffs-Appellants,

v.

PRANEETH KUMAR
KAMISHETTY,

      Defendant-Respondent.

_____

      Submitted September 22, 2021 – Decided October 19, 2021

      Before Judges Gooden Brown and Gummer.

      On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000036-20.

      Archer & Greiner, PC, attorneys for appellants (Patrick Papalia and Michael J. Forino, on the briefs).

      Lewis Brisbois Bisgaard & Smith, LLP, attorneys for respondent (Jonathan M. Preziosi and Afsha Noran, of counsel and on the brief).

PER CURIAM

Plaintiffs Suman Garlapati and 3R Bio Pharma, LLC (3R) appeal from the June 25, 2020 Chancery Division order dismissing their complaint against defendant Praneeth Kumar Kamishetty for failure to join an indispensable party in accordance with Rule 4:28-1.  We affirm in part and reverse in part.

We glean these facts from the record.  Garlapati and Kamishetty are both members of 3R, a biopharmaceutical consulting limited liability company with its principal place of business in North Brunswick, New Jersey.  3R provides "services to customers in the areas of drug safety, pharmacovigilance, regulatory affairs, quality, and clinical and non-clinical developments, among other things."  3R is organized under a partnership agreement[1] executed by Garlapati and Kamishetty, with Garlapati holding a forty percent ownership interest and Kamishetty holding a thirty-five percent ownership interest in 3R.[2]  Both serve as "[m]anaging [p]artners" under the partnership agreement.

Vigilare Biopharma Private Limited (Vigilare), a private limited company located in Telangana, India, is 3R's global implementation partner under a business outsourcing agreement providing that 3R should "explore" projects at

_____

[1]  Although 3R's organizing agreement is an operating agreement pursuant to N.J.S.A. 42:2C-2, the parties refer to it as a partnership agreement, so we use their terminology to avoid confusion.

[2]  The remaining member of 3R is not a party to this appeal.

the "[g]lobal level" and Vigilare "shall execute those projects in Hyderabad, [India]." Vigilare's operations include "[b]usiness [p]rocess [o]utsourcing, [m]edical [p]rocess outsourcing, [p]harmacovigilance," and other technical-based services in the biopharma, microbiology, medical, and biotechnology fields. Garlapati and Kamishetty each hold a forty percent membership interest in Vigilare, with Kamishetty acting as the managing director.

The outsourcing agreement governing the relationship between 3R and Vigilare includes a choice of law and forum selection clause that provides "all actions, proceedings or litigation relating to th[e] agreement shall be instituted and prosecuted solely within . . . India" and "all matters or issues collateral [to the agreement] shall be exclusively governed and construed and interpreted in accordance with the laws of . . . India." Additionally, the agreement contains a "[m]ediation/[a]rbitration" clause specifying that "[a]ny controversy or claim arising out of or relating to th[e a]greement or the [s]ervices (including any such matter involving any . . . agent of [3R]) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration."

On February 11, 2020, plaintiffs filed a seven-count complaint against Kamishetty in the Middlesex County Superior Court. Generally, plaintiffs alleged Kamishetty "diverted customers and prospective customers of 3R" to

3

"an Indian company owned by [his] brother-in-law," "allowed Vigilare to issue false and fraudulent invoices to 3R" and converted the payments to "non-business-related expenses," and caused Vigilare to deliver "substandard" work, resulting in 3R losing a significant amount of its annual revenue.

The complaint, which did not name Vigilare as a party, contained causes of action for: (1) breach of fiduciary duties based on Kamishetty causing Vigilare "to issue false and fraudulent invoices to 3R," "converting" and "misusing" the payments, and "driving clients away from 3R" (count one); (2) member oppression in violation of N.J.S.A. 42:2C-48 by virtue of Kamishetty acting "abusively, oppressively, and unfairly toward [p]laintiffs," frustrating "Garlapati's reasonable expectations as a minority member and plac[ing] his investment in 3R . . . at serious risk" (count two); (3) conversion and disgorgement based on Kamishetty "fraudulently" inducing 3R to pay Vigilare invoices "for services that were never rendered," and then utilizing the proceeds "for personal and non-business reasons" (count three); (4) tortious interference by Kamishetty "driving away" customers and diverting business from 3R (count four); (5) unjust enrichment by Kamishetty misusing funds paid by 3R to Vigilare "on false and fraudulent invoices" (count five); (6) unfair competition by Kamishetty "diver[ting] . . . projects" and "driv[ing] customers and business

4

away from 3R" (count six); and (7) fraud and misrepresentation by Kamishetty causing Vigilare "to issue false and fraudulent invoices to 3R" and induce reliance on the misrepresentations (count seven).

Kamishetty moved to dismiss the complaint pursuant to Rule 4:6-2(f) for failure to join Vigilare as an indispensable party as provided by Rule 4:28-1. Kamishetty asserted further that because the claims against him allege he acted wrongfully in his capacity as Director of Vigilare, the claims are subject to the choice of law, forum selection, and mediation/arbitration clauses in the outsourcing agreement. Plaintiffs opposed the motion and cross-moved for leave to file an amended complaint "reasserting the initial claims against Vigilare and Kamishetty," adding Vigilare as a defendant, and adding non-contract-based claims. According to plaintiffs, because the forum selection clause bars only claims "arising out of or relating" to the contract or services performed thereunder, by adding non-contract-based claims, the forum selection clause would not apply. Further, plaintiffs asserted the forum selection clause is inapplicable to Kamishetty "because he is not an individual party to the [outsourcing a]greement."

In a written opinion, the motion judge rejected plaintiffs' contentions, agreed Vigilare was "an indispensable party to this litigation" as defined under

Rule 4:28-1, and determined "the mediation/arbitration clause" which, "on its face [was] enforceable," controlled. Accordingly, the judge dismissed plaintiffs' initial complaint "without prejudice to allow . . . the matter[] to proceed to mediation/arbitration [in India] pursuant to the terms of the [o]utsourcing [a]greement." The judge also determined because the "[a]mended [c]omplaint allegations [were] within the terms of the mediation/arbitration clause," it "would be futile to permit the filing of an amended complaint." The judge entered a memorializing order on June 25, 2020.

In this ensuing appeal, plaintiffs do not contest the "court's dismissal of claims between 3R . . . and . . . Vigilare . . . or its ruling that such claims should be litigated in India under the arbitration and jurisdiction clause[s] contained in the agreement." Additionally, plaintiffs do not contest the denial of their cross-motion for leave to amend the complaint. However, plaintiffs maintain the entire complaint should not have been dismissed and raise the following points for our consideration:

> POINT I: THE TRIAL COURT ERRED IN DISMISSING GARLAPATI'S CLAIMS REGARDING THE OPPRESSIVE AND DISLOYAL TORTIOUS ACTIONS THAT KAMISHETTY UNDERTOOK IN HIS PERSONAL CAPACITY, AND IN DISMISSING GARLAPATI'S CLAIM FOR RELIEF UNDER THE NEW JERSEY REVISED UNIFORM LIMITED LIABILITY ACT, N.J.S.A.

6

42:2C-48(5), AS SUCH CLAIMS CAN ONLY BE DECIDED IN NEW JERSEY.

POINT II: THE INDIA MEDIATION, ARBITRATION AND FORUM SELECTION CLAUSES IN THE CONTRACT BETWEEN 3R BIO PHARMA, LLC AND VIGILARE BIOPHARMA PRIVATE LTD. ARE INAPPLICABLE TO KAMISHETTY'S PERSONAL MISCONDUCT AND HIS FAILURE TO FULFILL THE DUTIES THAT HE OWED TO 3R BIO PHARMA, LLC AND GARLAPATI AS A MEMBER OF THIS DOMESTIC COMPANY.

POINT III: THE TRIAL COURT ERRED IN DISMISSING GARLAPATI'S CLAIMS REGARDING RESPONDENT'S PERSONAL MISCONDUCT UNDER RULE 4:28-1, AS VIGILARE BIOPHARMA PRIVATE LTD. IS NOT AN INDISPENSABLE PARTY WITH REGARD TO THOSE CLAIMS.

POINT IV: THE TRIAL COURT OVERLOOKED GARLAPATI'S CLAIMS CONCERNING KAMISHETTY'S PERSONAL MISCONDUCT AND DREW ILLOGICAL CONCLUSIONS FROM EXTRINSIC FACTS ALLEGED IN GARLAPATI'S UNFILED PROPOSED AMENDED COMPLAINT.

"Our review of the trial court's dismissal order in this context is de novo." Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 287 (App. Div. 2014). We "'apply a plenary standard of review from a trial court's decision to grant a motion to dismiss'" and "'[owe] no deference to the trial court's conclusions.'" Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div.

7

2012) (quoting Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)).

A dismissal motion under Rule 4:6-2(f) for "failure to join a party without whom the action cannot proceed" is governed by Rule 4:28-1(a). Under Rule 4:28-1(a),

> [a] person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.

"If a person should be joined . . . but cannot be served with process, the court shall determine whether it is appropriate for the action to proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." R. 4:28-1(b). In making the determination, the court should consider "the extent to which a judgment rendered in the person's absence might be prejudicial to that person or those already parties"; "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided"; "whether a judgment

rendered in the person's absence will be adequate"; and "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Ibid. "Indispensability is usually determined from the point of view of the absent party and in consideration of whether or not his rights and interests will be adversely affected." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 4:28-1 (2021).

Based on our de novo review, we conclude the judge's dismissal of plaintiffs' complaint in its entirety was premature, overbroad, and overlooked the implications of pertinent provisions of the New Jersey Revised Uniform Limited Liability Company Act (NJ RULLCA), N.J.S.A. 42:2C-1 to -94. The NJ RULLCA provides judicial recourse for minority members who have been "oppressed" by the majority members. See N.J.S.A. 42:2C-48(a)(5). Under New Jersey law, "oppression has been defined as frustrating a [member's] reasonable expectations" and "is usually directed at a minority [member] personally." Brenner v. Berkowitz, 134 N.J. 488, 506 (1993). Thus, where a minority member's reasonable expectations have been frustrated by the majority members, the minority member has been oppressed and has a genuine claim for judicial recourse under the NJ RULLCA.

Furthermore, the NJ RULLCA permits a member to "maintain a direct action against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests." N.J.S.A. 42:2C-67(a).  The NJ RULLCA also allows, in certain circumstances, members to maintain derivative actions "to enforce a right of a limited liability company."  N.J.S.A. 42:2C-68.  Additionally, under the NJ RULLCA, members of a member-managed limited liability company (LLC) owe the company and other members fiduciary duties of loyalty and care.  N.J.S.A. 42:2C-39(a).  The duty of loyalty includes duties "to account to the company" for benefits derived "from the appropriation of a company opportunity; to refrain from dealing with the company . . . on behalf of a person having an interest adverse to the company; and to refrain from competing with the company."[3]  N.J.S.A. 42:2C:39(b).  The duty of care in a member-managed LLC is "to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law."  N.J.S.A. 42:2C-39(c).  And although an LLC's operating agreement may alter these fiduciary duties, it may not eliminate them.  N.J.S.A. 42:2C-11(d)(2), (3).

---

[3]  Notably, 3R's partnership agreement permits each partner to "have other business interests" and "engage in any other business" "whether competitive with the [p]artnership or otherwise."

A-4417-19

Plaintiffs concede the judge's dismissal of the contract-related claims between 3R and Vigilare was proper and agree the outsourcing agreement governs the dispute between 3R and Vigilare and, thus, should be resolved in India in accordance with the forum selection and mediation/arbitration clauses. Indeed, the claims contained in counts three, five, and seven each stem from 3R allegedly paying fraudulent invoices at Kamishetty's behest for services never rendered by Vigilare and Kamishetty misappropriating the proceeds. Under Rule 4:28-1, Vigilare is an indispensable party whose presence is necessary to protect its interests, but joinder is not feasible due to the forum selection and mediation/arbitration clauses in the outsourcing agreement.

On the other hand, plaintiffs contend the judge erred in concluding Vigilare was an indispensable party for the purpose of adjudicating their "[p]ersonal and NJ RULLCA [c]laims" against Kamishetty, leaving them "without legal recourse" to have such claims adjudicated in New Jersey as provided under the NJ RULLCA. According to plaintiffs, some claims concerned "Kamishetty's personal misconduct," acting in his individual capacity as a member of 3R. Specifically, plaintiffs assert Kamishetty breached his fiduciary duties and engaged in member oppression under the partnership agreement by virtue of his "diversion of customers and prospective customers."

11

Additionally, according to plaintiffs, Kamishetty's actions "also give rise to [the] common-law claims . . . [of] tortious interference and unfair competition" with 3R's business relationships. Plaintiffs contend "Vigilare need not be involved" for an adjudication of "these claims . . . under the NJ RULLCA" because "Vigilare has no ownership interest in 3R . . . and no right to assert an interest in disputes among its members."

Plaintiffs' argument has some merit. Although the judge correctly determined several of plaintiffs' claims were against Kamishetty in his capacity as managing director of Vigilare, some arguably were not. In addition to Kamishetty's position as managing director of Vigilare, he also had a separate relationship with plaintiffs, which was governed by the partnership agreement. However, on this limited record, we cannot determine whether these claims derive from Kamishetty's separate relationship under the partnership agreement or his relationship as a managing director or agent of Vigilare under the outsourcing agreement.

Without deciding the merits of the allegations, it is plausible plaintiffs asserted these claims against Kamishetty in his capacity as a member-manager of 3R and not as the managing director of Vigilare. If so, Vigilare would not be an indispensable party to these claims, and the claims would not be subject to

12

the forum selection and mediation/arbitration clauses of the outsourcing agreement. Therefore, we remand the matter to the Chancery Division to determine whether these claims are exclusively related to contractual dealings between 3R and Vigilare or survive dismissal based on Kamishetty's role as a member-manager of 3R and the attendant application of the NJ RULLCA. These issues, and any other relevant questions the judge identifies on remand, should be determined on an expanded record developed, at the judge's discretion, with additional submissions from the parties, including clarification from plaintiffs as to which parts of the complaint they believe survive dismissal.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION