**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2628-21

GEORGE BRESNIHAN,
FOUNTAIN HAMLETT,
SEAN WILLIAMS,
CHRISTOPHER DRAKES,
TROY BARBER,

       Plaintiffs-Appellants,

and

DERRICK M. MURPHY,

       Plaintiff-Respondent,

v.

THE KINTOCK GROUP OF
NEW JERSEY,

       Defendant-Respondent.

Submitted October 24, 2023 – Decided February 28, 2024

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0020-17.

Law Offices of Stephen Steinberg, PC, attorneys for appellants (Stephen Steinberg, of counsel and on the briefs; Jeff Edward Thakker, of counsel; Eltia I. Montano Galarza, on the briefs).

Kiernan Trebach, LLP, attorneys for respondent The Kintock Group of New Jersey (Mark A. Lockett, on the brief).

PER CURIAM

Plaintiffs George Bresnihan, Fountain Hamlett, Sean Williams, Christopher Drakes, and Troy Barber appeal from a March 15, 2022 Law Division order dismissing their complaint on the summary judgment motion of defendant, The Kintock Group of New Jersey.[1]  Plaintiffs argue that while residents of Kintock's halfway house facility in Bridgeton, they were unlawfully strip searched by officers assigned to the Special Investigations Division of the New Jersey Department of Corrections (DOC or NJDOC), and Kintock failed to intervene.  Because there was no cognizable evidence in the record to support a reasonable inference Kintock was responsible for plaintiffs' alleged injuries, we affirm.

---

[1]  Plaintiff Derrick M. Murphy represented himself before the trial court after appellants' attorney moved to be relieved as counsel but did not file a brief in the trial court in response to Kintock's motion.  Nor has Murphy filed a brief in this appeal.

A-2628-21

We summarize the facts from the motion record in a light most favorable to plaintiffs as the non-moving parties under the seminal Brill standard. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). In essence, the incident occurred on November 18, 2014, when DOC officers conducted a "mass" strip search of Kintock's residents during an approximately three-and-one-half-hour timeframe. Kintock's employees did not partake in the searches. Plaintiffs did not sue the DOC.

Kintock holds itself out as "a non-profit organization[,] which contracts with federal and state law enforcement agencies to provide cost effective alternatives to incarceration and re-entry services for individuals transitioning from the criminal justice system to the community." See N.J.S.A. 30:4-91.2. In 2013, Kintock and the DOC executed a contract for the operation of a halfway house in Bridgeton, which was designated by the Commissioner of Institutions and Agencies "as a place of confinement." See N.J.S.A. 30:4-91.1.

The contract contained a provision entitled, "Indemnity/Liability to Third Parties," requiring Kintock to indemnify and defend the State against "all claims demand, suits, actions, recoveries, judgments, and costs and expenses" for an injury arising from "the work and/or materials supplied under th[e] contract." In its request for proposal, the DOC advised, "[s]pecific facility searches . . .

may be conducted whenever" the DOC deems the search "necessary and appropriate," without notice to the contractor.

More than two years after the incident, in December 2016, plaintiffs filed an eight-count complaint against Kintock. In the first four counts, plaintiffs alleged violations of: the state and federal constitutions; the strip search statute, N.J.S.A. 2A:161A-1 to -10, and the Attorney General Guidelines issued thereunder; the NJDOC regulation governing strip searches; and Kintock's sexual assault policy which prohibited cross-gender strip searches. Plaintiffs' remaining claims alleged negligent hiring and training; intentional and negligent infliction of emotional distress; and breach of custodial duty. Plaintiffs sought compensatory and punitive damages, and counsel fees. They also raised allegations of a potential class action.

In their complaint, plaintiffs asserted they were strip searched by NJDOC officers in an area known as "the alley," which is "a corridor" that "runs the length of the facility." The alley was within view of "several surveillance cameras." A "control room" with clear glass windows was located in the center of the alley, affording staff the ability to observe the alley. "Male and female staff members . . . were on duty and working in the control room and observed the residents being strip searched." Contending the facility had "private rooms

. . . where private searches could have been conducted," plaintiffs claimed the "strip searches were performed in the open in an extremely non-private location."

When deposed, Bresnihan asserted Kintock's director, Michael Kenney, "was like supervising . . . getting [the residents] where [they] needed to go and getting [them] ready for the strip." Kenney told Bresnihan "if [he] didn't shut up they would take [him] out of line and put [him] in a holding cell." Bresnihan said "about fifteen people" were around when Kenney made the statement, but Bresnihan could not name any of them. Without elaborating, Bresnihan further stated Kenney was "ex-DOC so they knew him, so they let him run the show," i.e., Kenney "was in charge."

After Kintock answered the complaint, the matter followed a tortured procedural path, the details of which are not relevant here. Suffice it to say, the case was referred to mediation and arbitration without staying the litigation; both parties filed discovery motions; and various attorneys were substituted for the parties. In early 2020, Judge James R. Swift denied plaintiffs' application for class certification and granted their unopposed motion to file an amended complaint. More than one year later, plaintiffs filed their amended complaint, which included forty-one counts and bore little resemblance to the proposed

5

amended complaint attached to their earlier motion. The judge dismissed the amended complaint for that reason on Kintock's motion to dismiss the complaint, but denied its application to dismiss the original complaint claims on statute of limitation grounds as waived for reasons that are not pertinent to this appeal.

Ultimately, the parties cross-moved for summary judgment. Immediately following oral argument, Judge Swift dismissed almost all of plaintiffs' claims. In particular, the judge was not persuaded that the indemnity provision set forth in the 2013 contract between Kintock and the DOC afforded "plaintiffs some independent right of action against Kintock for actions of the DOC." Rather, under the provision, "if somehow the DOC is held liable for some incident, then Kintock . . . must identify them."

Nor was the judge convinced plaintiffs demonstrated a prima facie claim of negligent or intentional infliction of emotional distress as DOC officers conducted the strip searches. Even assuming plaintiffs were embarrassed and humiliated by the searches, the judge found there was no evidence the DOC officers had any "direct involvement in the way the strip search was conducted." Similarly, the judge dismissed plaintiffs' punitive damages claim, finding there

A-2628-21

was no evidence of any "willful" or "wanton disregard of persons" by any Kintock employees.

Although he found Kintock owed plaintiffs a duty of care vis-à-vis their constitutional rights, the judge reserved decision only as to whether Kintock violated that duty by failing to intervene during the DOC's strip searches. All other counts were dismissed.

Shortly thereafter, Judge Swift issued a cogent written decision, granting Kintock's motion in its entirety. The judge reiterated that Kintock owed a duty of care to its residents and reasoned a significant public interest supported that finding because Kintock was "housing the residents as a place of confinement."

Turning to the remaining elements of a negligence action, the judge was not convinced plaintiffs established Kintock's conduct was the proximate cause of their alleged injuries. The judge elaborated:

> In this case, the proximate cause of . . . [p]laintiffs' injury was the humiliating and demeaning strip search that took place in a public portion of Kintock's facility while in the presence of many other residents. However, the strip search was not carried out by any Kintock employees, and was not done under the direction of anyone at Kintock. Kintock's only connection with the strip search was they aided in directing some of the residents to the area of the facility where the strip search took place. The search itself was done entirely by NJDOC staff. As the perpetrators of the action in question, it is the NJDOC that could

7

> possibly be found to be the proximate cause of [p]laintiff[s'] injuries, not the Kintock staff. There is no evidence to support the idea that Kintock['s] actions could be the proximate cause of [p]laintiff[s'] damages.

The judge therefore held Kintock was not liable under a negligence theory. See e.g., Robinson v. Vivirito, 217 N.J. 199, 208 (2014) (reiterating "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages").

Judge Swift also rejected plaintiffs' contentions that Kintock had a duty to intervene by either directing DOC staff to cease the strip searches or conduct them "in a less intrusive manner" and that Kintock breached that duty to plaintiffs. The judge acknowledged plaintiffs' argument that Kintock's legal authority to detain residents obligated the facility to follow "all relevant laws, regulations, and guidelines." However, the judge recognized the lack of authority "support[ing] the notion that employees of a halfway home have a duty to intervene when NJDOC is performing a function at their facility."

Referencing the 2013 agreement between the DOC and Kintock, the judge noted the contract "specifically reserve[d] the right for NJDOC to perform searches completely at the discretion of NJDOC, without prior notice to Kintock." The judge distinguished the Third Circuit's decision in Smith v.

Mensiger, 293 F.3d 641, 651 (3d Cir. 2002), which addressed the liability of the law enforcement officers "for failing or refusing to intervene when a constitutional violation takes place in his [or] her presence if there exists a 'realistic and reasonable opportunity to intervene.'" Noting "the credible evidence" in the record and affording plaintiffs the benefit of "all rational inferences," the judge determined "it [wa]s not realistic or reasonable that a civilian employee of Kintock would have authority to stop or redirect armed NJDOC officers who ha[d] the contractual authority to conduct such a search."

On appeal, plaintiffs agree with Judge Swift's decision that Kintock owed plaintiffs a duty of care under the common law but argue whether Kintock breached that duty was a question for the trier of fact. Plaintiffs maintain they were third-party beneficiaries under the indemnity provision of the 2013 contract between the DOC and Kintock. In various overlapping arguments, plaintiffs further claim Kintock's employees acted under color of state law and, as such, they violated plaintiffs' constitutional rights, and the administrative regulations and Attorney General Guidelines governing strip searches conducted by the DOC. Plaintiffs also assert the judge failed to decide certain claims and erroneously decided others.

After de novo review, <u>Conforti v. County of Ocean</u>, 255 N.J. 142, 162 (2023), we reject plaintiffs' unsupported claims. We affirm the order under review substantially for the well-founded reasons expressed by Judge Swift in his accompanying oral and written decisions. Having employed the same standard as the judge, we conclude there are no material factual disputes and defendant is entitled to judgment as a matter of law. <u>See</u> <u>Samolyk v. Berthe</u>, 251 N.J. 73, 78 (2022); <u>Brill</u>, 142 N.J. at 540; <u>R.</u> 4:46-2(c). Plaintiffs' contentions therefore lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). We add only the following brief remarks.

The gravamen of plaintiffs' argument is that Kintock's employees acted "under color of state law," or they assumed responsibility for the DOC's actions under the 2013 contract and, as such, they assumed the risk for the DOC's constitutional violations. Plaintiffs' claims are mistakenly premised on their misconception that they were beneficiaries under the contract, or the designation of the Kintock facility under N.J.S.A. 30:4-91.2 imputed liability to Kintock for the DOC's actions. Plaintiffs cite no authority to support their claims, and we have found no such precedent.

It is beyond peradventure that "no constitutional deprivation occurs without State action." <u>Santa Barbara v. Heart of Cedar Lane</u>, 226 N.J. Super.

10

509, 511 (App. Div. 1988) (citing Callen v. Sherman's Inc., 92 N.J. 114, 123-24 (1983)).  Under both 42 U.S.C. § 1983, and the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, a plaintiff must establish two steps.  See Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011).  "The first step 'is to identify the state actor, "the person acting under the color of law," that has caused the alleged deprivation.'"  AmeriCare Emergency Med. Serv., Inc. v. City of Orange Twp., 463 N.J. Super. 562, 574 (App. Div. 2020) (quoting Rezem, 423 N.J. Super. at 114).  "Next the party must 'identify a right, privilege or immunity secured to the claimant' by the constitutions of the state and federal governments or by state and federal laws." Ibid.  Pursuant to the CRA, private actions for violations of an individual's substantive rights only lie against persons acting under "color of law," N.J.S.A. 10:6-2(c), meaning the exercise of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Polk County v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

Under some circumstances, a private party can be civilly liable for damage caused by violations of constitutional rights accomplished through their cooperation with a state actor.  For example, "a challenged activity may be state

action . . . when a private actor operates as a 'willful participant in joint activity with the State or its agents.'" Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982)). However, a private action "is not converted into one under color of state law merely by some tenuous connection to the state action." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).

In the present matter, the parties do not dispute that the strip searches were conducted exclusively by DOC officers. Thus, as the motion judge found, there was no evidence in the record to suggest that Kintock participated in the DOC-conducted strip searches, other than Kintock "aided in directing some of the residents to the area of the facility where the strip search took place." Further, the DOC contractually reserved full authority to conduct all searches at the facility without notice to Kintock. Thus, there is no evidence in the record to suggest the strip searches were conducted as a "joint activity" between the DOC and Kintock.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION