276 N.J. Super. 613 (1994)
648 A.2d 732
41 MAPLE ASSOCIATES, A LIMITED PARTNERSHIP AND 47 MAPLE STREET COMPANY, A PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
COMMON COUNCIL OF THE CITY OF SUMMIT AND THE CITY OF SUMMIT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1994.
Decided October 13, 1994.
*614 Before Judges J.H. COLEMAN, DREIER and VILLANUEVA.
James G. Webber argued the cause for appellants (Dempsey, Dempsey & Sheehan, attorneys; Mr. Webber on the brief).
*615 Mark T. McMenamy argued the cause for respondents (Bressler, Amery & Ross, attorneys; Mr. McMenamy and Daniel T. Kopec, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs appeal from the dismissal of their action for inverse condemnation and for damages under 42 U.S.C.A. § 1983. Plaintiffs are two partnerships the principals of which are Howard Walters and Barry Walters. The partnerships own lots 23 and 24, block 151 on the tax map of the City of Summit, commonly known as 41-47 Maple Street, Summit. The brothers' partnership already owned 47 Maple Street, and their limited partnership purchased 41 Maple Street from their mother, Miriam Walters and from the estate of their late father Charles Walters.
Plaintiffs' predecessors in title, Charles and Miriam Walters, applied to the Planning Board of the City of Summit to develop the property by (1) adding a two-story addition over an existing one-story clothing store operated by them at 41 Maple Street and (2) connecting the expanded building by an atrium to the adjoining office building at 47 Maple Street. The applicants requested a site plan approval as well as a variance from the parking requirements which effectively prohibited development in the central retail business district and a bulk variance because the new structure would exceed the height limitation. After two evenings of hearings, the Planning Board approved plaintiffs' application on September 28, 1987 and memorialized its decision by a resolution dated November 23, 1987.
After the Planning Board granted this preliminary and final site plan approval, the applicants' son, Barry Walters, spoke to the City of Summit Construction Official concerning the applicants' filing for a construction permit. The construction official allegedly informed Mr. Walters that any filing of an application for a construction permit would be futile, because the Common Council of the City of Summit had already determined to file suit against *616 the Planning Board and the applicants to stop the development. After being informed that no construction permit would issue, Mr. Walters immediately called the Mayor of the City of Summit who also informed Mr. Walters that there was "no way in hell they're going to let you build." The City then filed the threatened action in lieu of prerogative writs against the Planning Board and applicants, alleging that the ordinance prohibited development in the central retail business district and was not susceptible to a variance by the Planning Board.
While the City asked the court to rule on the validity of the parking ordinance that served as a building moratorium, Judge Beglin granted the Planning Board's and applicants' motion to dismiss the complaint on the grounds that the City lacked standing to sue its own Planning Board. The City appealed. By an unpublished opinion dated April 19, 1990, we affirmed Judge Beglin's decision, stating:
[A] municipality may challenge a planning board's grant of a variance only where that variance substantially affects the zoning plan of the municipality. Township of Dover v. Board of Adj. of Dover, 158 N.J. Super. 401, 386 A.2d 421 (App.Div. 1978).
We further adopted Judge Beglin's conclusion that the variance granted here "did not significantly affect the municipal zoning plan."
At or about the time of our earlier decision, the Board of Adjustment of the City of Summit ruled that the moratorium ordinance violated the Municipal Land Use Law, N.J.S.A. 40:55D-90b and was, therefore, unenforceable. That decision was not appealed.
Plaintiffs contend that because of the actions of the City of Summit they were delayed from January 1988 through April 1990 from proceeding on their development. They are seeking substantial money damages.[1]
*617 Plaintiffs initially claim that the moratorium imposed by the Summit parking ordinance was ipso facto a violation of plaintiffs' constitutional rights, and that plaintiffs thus had an absolute right under AMG Assoc. v. Township of Springfield, 65 N.J. 101, 112, 319 A.2d 705 (1974) to claim damages caused by the allegedly illegal moratorium. In this context, however, the moratorium issue is moot because of their failure to apply for a construction permit, an issue discussed infra. Also, whether plaintiffs' predecessors in title were correct or incorrect concerning the moratorium issue, the fact that they were granted a variance and later prevailed in their action had the same practical effect as if there were no moratorium. The property became potentially available for the requested development after the variance approval. The moratorium issue became, in the words of Judge Beglin, "just ... an interesting diversion."
In plaintiffs' second point, they contend that the trial judge should not have disregarded the Board of Adjustment's conclusion that the parking ordinance created an illegal moratorium. As previously noted, the trial judge did not have to reach this issue nor, as we will explain, need we make such a determination.
Next, plaintiffs contend that the trial judge mistakenly resolved a factual issue on a motion for summary judgment in contravention of R. 4:46-2 and Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). They contend that the proofs were susceptible to a finding that plaintiffs' predecessors had applied for and were implicitly and finally denied a construction permit. As Judge Beglin determined, this simply is not so. It is true that on a motion for summary judgment, Judge Beglin was required to resolve all contested issues of fact in favor of plaintiffs. Thus, Judge Beglin for the purpose of his decision, and we for the purpose of this opinion, must accept the fact that Barry Walters was definitively told by the construction official of the City of Summit that no construction permit would issue because the Common Council of the City of Summit would not accept the variance granted by the Planning Board, and that the *618 City immediately would be commencing an action to vindicate that position. We also must accept that the then mayor confirmed this fact to Mr. Walters. We likewise accept the proposition that a party is not obligated to pursue an obviously unavailing course of conduct in order to establish a right to review. Riggs v. Township of Long Beach, 101 N.J. 515, 526, 503 A.2d 284 (1986); Brunetti v. Borough of New Milford, 68 N.J. 576, 589, 350 A.2d 19 (1975).
Notwithstanding these principles, we must examine what would have happened had plaintiffs' predecessors applied for a construction permit. They would have initially prepared the properly signed and sealed drawings and specifications and submitted them with the application to the construction code official. N.J.S.A. 52:27D-130. The construction code official, whatever his view may have been of the zoning problem, was required to examine the application and pass upon its construction aspects. N.J.S.A. 52:27D-131a. The construction official had no discretion. He might personally have believed that the Planning Board had been incorrect in granting the variance; he might personally have believed that the City would prevail in the planned action to challenge the variance; yet he was required within twenty days to pass on the construction aspects of the application. He would have acted solely in a ministerial capacity. Deer-Glen Estates v. Board of Adj. of Fort Lee, 39 N.J. Super. 380, 384, 121 A.2d 26 (App.Div. 1956).
Even if the construction code official violated his statutory duty to pass upon the application, or if he passed upon the application and arbitrarily rejected it, plaintiffs' predecessors were not without recourse. A failure to pass upon the application could have been immediately corrected by an action in lieu of prerogative writs, and any mistaken exercise could have been alleviated through an appeal to the County Construction Board of Appeals which, we assume, would be free of any extraneous municipal influences. See N.J.S.A. 52:27D-127.
Plaintiffs' predecessors, as the applicants first for the variance and then for a construction permit, were required to exhaust their *619 administrative remedies before they would have been in a position to bring an action in lieu of prerogative writs. R. 4:69-5. There are exceptions to this rule. As is noted in Pressler, Current N.J. Court Rules, comment 6 on R. 4:69-5 (1995):
While ordinarily administrative remedies must be exhausted before resort is had to the court, exhaustion is neither a jurisdictional nor an absolute requirement and may be dispensed with where the interest of justice requires, or if there is a need for prompt decision in the public interest or where there is no question as to administrative discretion or judgment and only a question of law is involved or where further resort to administrative recourse would be futile....
Note, however, that relief from the exhaustion requirement is not automatic. Thus the mere allegation that a constitutional issue is involved will not relieve plaintiff of the exhaustion requirement.... Moreover plaintiff must demonstrate that irreparable harm would be caused by the delay in determination attendant upon exhaustion of the administrative remedy.
[Citations omitted]
In this case, none of the exceptions to the exhaustion requirement could apply. Until plaintiffs' predecessors obtained a construction permit and were then improperly prevented from proceeding by the municipality, they or their predecessors had no property right, but merely an intention to construct. The alleged improper moratorium or municipal antipathy to the development could not have improperly deprived plaintiffs or their predecessors of a mere expectation which had not ripened into a property right by the issuance or improper denial of an appropriate permit.
This analysis did not require the trial judge to resolve disputed facts. The operative facts are uncontested. They support the conclusion that plaintiffs or their predecessors, by failing to place themselves in a position where they possessed the right to commence construction, lacked standing to complain of defendants' actions.
This argument also defeats both of plaintiffs' substantive claims: their claim for inverse condemnation based upon Nollan v. California Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and their claim for deprivation of their civil rights under 42 U.S.C.A. § 1983. Both are dependent upon plaintiffs having a property right that was taken or violated. Such claims *620 presuppose a right to construct the disputed facility which, as noted earlier, required either the possession of a valid construction permit or the final improper denial of such a permit.
Furthermore, on the issue of a partial taking, there was no prima facie showing that the parking requirements which might have been considered a building moratorium presented an unreasonable ratio (one space for each 450 sq. ft. of commercial area, thus, requiring twenty-seven spaces for plaintiffs' proposed expansion). The reasonableness of the ordinance, which would be presumed if the issue were reached, remained unchallenged before the trial court. Nor was there a substantial claim that the ordinance failed to effect a legitimate public purpose. Plaintiffs would then have been required to demonstrate that they were left with no reasonable use of their property. See Moroney v. Mayor of Old Tappan, 268 N.J. Super. 458, 463, 633 A.2d 1045 (App.Div. 1993), certif. denied, 136 N.J. 295, 642 A.2d 1004 (1994). Cf. In re Plan for Orderly Withdrawal, 129 N.J. 389, 416-417, 609 A.2d 1248 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993). Given their continued use of the property until the construction was completed, this claim would have independently failed.
While we may have some disagreement with the trial judge concerning his dismissal of plaintiffs' § 1983 claim on the basis of the statute of limitations, it is evident that there is no constitutional deprivation where plaintiffs' claim had not ripened by the issuance or final denial of a building permit. See Acierno v. Mitchell, 6 F.3d 970, 977 (3d Cir.1993); Biddison v. City of Chicago, 921 F.2d 724, 728 (7th Cir.1991); Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir.1990); and Trinity Resources, Inc. v. Township of Delanco, 842 F. Supp. 782, 796-797 (D.N.J. 1994).
We also do not need to reach the issue of whether plaintiffs' § 1983 claim would even have been cognizable by the courts, where they are not the specific parties whose rights were allegedly affected. The present plaintiffs are a partnership and limited *621 partnership. The former owners, who were allegedly denied their rights, were the parents of the partnerships' principals. However, since plaintiffs unsuccessfully attempted to join the original applicants as parties-plaintiff in this action, that ruling might also have been reviewed. The identity of those affected by the allegedly improper municipal action might thus have presented an additional salient issue in this case, had the construction permit been issued or had it been finally and improperly denied. On the facts of this case, however, we need not reach the issue.
With this additional explanation, we affirm the dismissal of plaintiffs' complaint substantially for the reasons stated by Judge Beglin in his oral decision of April 21, 1993.
NOTES
[1] Specifically, plaintiffs contend that they required revised blueprints for an additional $5,685 and had increased lending and construction costs for the 2.2 million dollar project.