870 A.2d 637 (2005)
376 N.J. Super. 295
INDEPENDENT REALTY COMPANY, Plaintiff-Appellant,
v.
TOWNSHIP OF NORTH BERGEN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2005.
Decided April 8, 2005.
*639 Jack Jay Wind, Jersey City, argued the cause for appellant (Margulies, Wind & Herrington; attorneys; Mr. Wind, on the brief).
Cindy Nan Vogelman, Secaucus, argued the cause for respondent (Chasan, Leyner, Bariso & Lamparello, attorneys; Ms. Vogelman, of counsel; Ms. Vogelman and Nicole R. Chhabria, on the brief).
Before Judges PARRILLO, GRALL and RIVA.
*638 The opinion of the court was delivered by
PARRILLO, J.A.D.
Plaintiff, Independent Realty Company (Independent), appeals from the order of the Law Division dismissing its declaratory judgment action. In its lawsuit, plaintiff sought a determination both that a change in the township's zoning ordinance did not vitiate prior site plan and variance approvals, and that plaintiff was entitled to the issuance of building permits consistent with those approvals. The trial judge found no justiciable controversy ripe for adjudication or any exhaustion of administrative remedies and, therefore, declined to render a purely advisory opinion. We affirm.
The facts may be briefly stated. Plaintiff is the owner of undeveloped property at 60th Street and Granton Avenue in the Township of North Bergen (township). In 1987, plaintiff filed an application with the township's Zoning Board of Adjustment for site plan approval and for various use and bulk variances to construct a 27-story residential building, consisting of twenty floors of residential living space and seven floors of parking. The residential living space would contain approximately 310 dwelling units. The Board of Adjustment granted site plan approval with variances and issued a corresponding resolution on May 4, 1988, memorializing its decision.
Since obtaining these approvals, plaintiff has never sought to develop or construct on the site. In fact, plaintiff has never filed to renew its approval nor even applied *640 to the township construction official for the requisite permits to begin construction on the property. In this regard, prior to applying for a construction permit, an applicant must submit to the township construction official the following material: a) approval from the Municipal Utilities Authority (MUA) representing that the applicant has applied for and received a sewer connection permit; b) the pre-requisite for an MUA approval, which is a Treatment Works Approval (TWA) from the New Jersey Department of Environmental Protection (DEP); c) proof of payment of 50% of the sewage connection fee to the MUA, N.J.S.A. 40:14A-8; and d) a certification from the Hudson, Essex, & Passaic Soil Conservation District (HEPSCD) that states that the proposed construction meets all applicable soil and sediment control standards, N.J.S.A. 4:24-39 to -55. As noted, plaintiff has never applied for a construction permit, nor taken any steps to obtain the necessary approvals or certifications from the MUA, the DEP or the HEPSCD, nor submitted proof of payment of the sewer connection fee to the MUA.
When plaintiff's application was approved in 1988, its property was situated in a zone designated as R-2, which allowed for multi-family high rise dwellings in accordance with the zoning ordinance then in effect. However, the township zoning ordinance was amended in June, 1999, adding an R-3 zone and changing the zone in which plaintiff's property is located from R-2 to R-3. The 1999 ordinance revision was adopted after the township's Master Plan was updated by the Municipal Planning Board in April, 1994. The plan provided in relevant part:
The proposed R-3 zone is simply a redesignated R2 zone permitting all the housing types now permitted in the R2 zone (i.e. a proposed change on the map from R2 to R3 is a change in designation only; it represents no change in housing density).
Thus, the general intent of the 1999 revision was articulated in Article 1, Section 2 of the amended ordinance wherein it provided that the regulations were:
based on the land use plan element of the master plan as adopted and subsequently amended by the North Bergen Planning Board and designed to be substantially consistent therewith with respect to, among other factors, the character of each district and its peculiar suitability for certain uses with a view to encouraging the most appropriate uses of land throughout the Township of North Bergen.
The amended ordinance further said that:
[t]his ordinance is not intended to abrogate or annul any building permit, certificate of occupancy, variance or other lawful permit issued and in full force and effect on the effective date of this ordinance.
Another amendment to the zoning ordinance, adopted in October, 1999, applied prospectively to variances granted "hereafter", and provided for the expiration of the variance if construction on the property were not commenced within one year of the date of the grant.
Despite no adverse ruling by the township Planning Board, Board of Adjustment, or construction officials, and without any demonstration that the site plan will not remain viable in light of the zoning revisions, plaintiff instituted this declaratory judgment action seeking a determination that prior approvals remain in full force and effect and that it is entitled to the issuance of building permits consistent with these approvals. On cross-motions for summary judgment, the trial court dismissed plaintiff's action, finding plaintiff had failed either to present a justiciable controversy or exhaust its administrative *641 remedies. In declining to render an advisory opinion, the judge reasoned:
There is no judicial controversy before the Court. The plaintiff has not taken any steps to obtain approvals from the New Jersey Department of Environmental Protection, the MUA or the Hudson Essex Passaic Soil Conservation District. The plaintiff has also not attempted to obtain a construction permit.
The plaintiff, therefore, has not and cannot present any showing that it would be prevented from moving forward with its construction plans. Rather, the plaintiff is asking the Court to make a determination as to a possible conflict that may arise in futuro. It is not within this Court's purview to render such an advisory opinion.
....
There is neither a question of law nor a question of fact before this Court. The interests of justice do not require this Court to render what would amount to an advisory opinion where the parties have not been able to demonstrate that the site plan will not remain viable.
However, even assuming a controversy ripe for resolution, the trial court held that plaintiff first had to exhaust its administrative remedies before seeking judicial review:
The relevant case law encourages that the Zoning Board make the first determination as to land use matters as it maintains more knowledge and experience in such matters. Comparison of the two ordinances and amendments is clearly better left to the Zoning Board ... the agency that adopted ... and revised the changes.
On appeal, plaintiff contends that it was entitled to declaratory relief. We disagree.
Although there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies, compare U.S. Const. art. III, § 2 with N.J. Const. art. VI, § 1, nevertheless it is well settled that we will not render advisory opinions or function in the abstract. Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971); New Jersey Tpk. Auth. v. Parsons, 3 N.J. 235, 240, 69 A.2d 875 (1949). "We have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness." Crescent Park, supra, 58 N.J. at 107, 275 A.2d 433 (emphasis supplied). In other words, we do not render "recommendations" but rather "decide only concrete contested issues conclusively affecting adversary parties in interest." Parsons, supra, 3 N.J. at 240, 69 A.2d 875 (quoting Borchard, Declaratory Judgments at 34-35 (2d ed.1941)).
This strong policy is solidly embedded in our Declaratory Judgment Act, the remedial purpose of which is to afford "relief from uncertainty and insecurity with respect to rights, status, and other legal relations." N.J.S.A. 2A:16-51. However, in addressing such uncertainty, the courts are to act "within their respective jurisdiction....," N.J.S.A. 2A:16-52, which is not to "be invoked in the absence of an actual controversy." Parsons, supra, 3 N.J. at 240, 69 A.2d 875. "Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim." Ibid. (quoting Borchard, supra, at 29). Simply put, the threshold question is whether the controversy *642 presented is actual and bona fide. Id. at 241, 69 A.2d 875.
Stated somewhat differently, declaratory judgment is not an appropriate way to discern the rights or status of parties upon a state of facts that are future, contingent, and uncertain. Civil Serv. Comm'n v. Senate, 165 N.J.Super. 144, 148, 397 A.2d 1098 (App.Div.), certif. denied, 81 N.J. 266, 405 A.2d 811 (1979). "It is clear that relief by way of a declaratory judgment should be withheld when the request is in effect an attempt to have the court adjudicate in advance the validity of a possible [claim or] defense in some expected future law suit." Donadio v. Cunningham, 58 N.J. 309, 325, 277 A.2d 375 (1971). By the same token, "the declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum." Pennsylvania Dep't of Gen. Serv. v. Frank Briscoe Co., 502 Pa. 449, 466 A.2d 1336, 1341 (1983); See also Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194 (11th Cir.1982)(declaratory relief unavailable when action filed in anticipation of another proceeding).
For example, in Borough of Rockleigh v. Astral Industries, 29 N.J.Super. 154, 164, 102 A.2d 84 (App.Div.1953), we refused to grant declaratory relief because doing so would require an "excursion into the future." There, the plaintiff successfully obtained an injunction against defendant for a violation of a municipal zoning ordinance, but, despite the violation, plaintiff was not entitled to a declaratory judgment "delineating the extent of operation which would be permitted on the part of [defendant] in the future." Ibid; See also Civil Serv. Comm'n v. Senate, supra, 165 N.J.Super. at 147-49, 397 A.2d 1098.
Governed by these principles, relief under our Declaratory Judgment Act is unavailable here. We are satisfied that the issue presented does not raise a justiciable controversy that is ripe for judicial determination.
Lacking is the requisite element of adverseness. The township has never disputed that the site plan and variance approvals previously issued remain effective; nor does it now claim that the revised ordinance renders those approvals invalid. Moreover, there has been no adverse municipal decision affecting plaintiff's rights or interest in the subject property. In fact, plaintiff has never proceeded to develop or construct on its site. Plaintiff never made application for a construction permit nor even fulfilled any of the State and local regulatory and payment requirements in anticipation of applying for such a permit. In a word, plaintiff has failed to demonstrate the existence of an issue in controversy between the parties.
Even if plaintiff were to identify an issue ripe for resolution, it has nevertheless failed to show that the trial court abused its discretion in requiring it to first exhaust its administrative remedies. While it has been recognized in dicta that a party may file a declaratory judgment action seeking to interpret a municipal ordinance, Pullen v. South Plainfield Planning Board, 291 N.J.Super. 303, 309, 677 A.2d 278 (Law Div.1995), aff'd, 291 N.J.Super. 1, 676 A.2d 1095 (App.Div.1996), the trial judge here acted well within her discretion in determining plaintiff must first exhaust its right to seek such an interpretation from the local Board of Adjustment.
In the analogous context of actions in lieu of prerogative writs, Rule 4:69-5 requires a litigant in plaintiff's position to exhaust local administrative remedies unless "it is manifest that the interest of justice requires otherwise...." See also *643 21st Century Amusements, Inc. v. D'Alessandro, 257 N.J.Super. 320, 322, 608 A.2d 438 (App.Div.1992); Route 15 Assocs. v. Tp. of Jefferson, 187 N.J.Super. 481, 488-90, 455 A.2d 518 (App.Div.1982). The "interest of justice" qualification confers discretion on the court before which the rule is raised. See Nolan v. Fitzpatrick, 9 N.J. 477, 484-85, 89 A.2d 13 (1952). In Nolan, the Supreme Court noted:
[i]n every case the court should determine whether it is in the interest of justice to dispense with the requirement that the plaintiff exhaust other judicial or administrative remedies, bearing in mind, however, that [the rule of court] itself dictates that the interest of justice is ordinarily best served by requiring the plaintiff to first exhaust his other remedies and that it is only in special circumstances that the interest of justice will require otherwise.
[Id. at 487, 89 A.2d 13.].
Thus, although neither jurisdictional nor absolute, relief from the exhaustion requirement is not automatic. Pressler, Current N.J. Court Rules, comment 6 on R. 4:69-5 (2005); 41 Maple Assocs. v. Common Council of the City of Summit, 276 N.J.Super. 613, 619, 648 A.2d 732 (App.Div.1994). Here, plaintiff has made no demonstration sufficient to relieve itself of the exhaustion requirement.
In the first place, since no local action is being challenged, there can be no suggestion that requiring exhaustion of local administrative remedies would be futile. 41 Maple Assocs., supra, 276 N.J.Super. at 619, 648 A.2d 732. While a party may not be obligated to pursue an obviously unavailing course of conduct in order to establish a right to review, Riggs v. Tp. of Long Beach, 101 N.J. 515, 526, 503 A.2d 284 (1986), that is simply not the situation here. Furthermore, this is not a case where there is a need for prompt decision in the public interest or where irreparable harm would be caused by the delay in determination attendant upon exhaustion of the administrative remedy. 41 Maple Assocs., supra, 276 N.J.Super. at 619, 648 A.2d 732. Indeed, sixteen years have elapsed since the approvals were first obtained and plaintiff still has yet to take any steps to develop the site consistent with the plans upon which the approvals were based.
Finally, although the present matter concerns the interpretation of an ordinance, it does not involve a pure legal issue. Rather, especially in light of the interim change in bulk variance standards, proper application of the revised ordinance to site plan approvals and variances granted over sixteen years ago presents a mixed question of law and fact concerning local land use policy and its implementation. See Tp. of West Windsor v. Nierenberg, 150 N.J. 111, 135, 695 A.2d 1344 (1997); 21st Century Amusements, supra, 257 N.J.Super. at 323, 608 A.2d 438. As the trial court correctly noted, this question of local land use following a sixteen-year hiatus is best left to the local board of adjustment, which clearly has the authority to interpret zoning ordinances. N.J.S.A. 40:55D-70(b).
In sum, we find no justiciable issue ripe for judicial resolution, and, therefore, the trial judge's dismissal of plaintiff's declaratory judgment action was proper. We further hold that the circumstances of this case require exhaustion of administrative remedies so that the township's Board of Adjustment, as a policy-making body, can exercise its statutory authority to review and pass upon the request for interpretation and application of the zoning ordinance in issue.
Affirmed.