NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1815-13T4
            A-2127-14T4

CLAUDIA CASSER,

     Plaintiff-Appellant,

v.

TOWNSHIP OF KNOWLTON, MAYOR AND
COMMITTEE FOR KNOWLTON, individually
and in their official capacities,
TOWNSHIP OF KNOWLTON PLANNING BOARD,
MEMBERS OF THE TOWNSHIP OF KNOWLTON
PLANNING BOARD, individually and in
their official capacities, RENE MATHEZ,
DAVID A. SMITH, RONALD C. FARBER,
SCOTT ODORIZZI, CLAYTON TAYLOR, MICHAEL
TIRONI, HAL BROMM, GEORGE JAMES,
CARLA CONSTANTINO, MASER CONSULTING,
P.A., JOSEPH J. LAYTON, MARK J. HONTZ
and TED RODMAN,

     Defendants-Respondents,

and

KATHY CUNTALA, JOHN ANDERSON,
PETER PAGLIA and VIVIAN PAGLIA,

     Defendants.

_____

| APPROVED FOR PUBLICATION |
| --- |
| July 7, 2015 |
| APPELLATE DIVISION |

CLAUDIA CASSER,

     Plaintiff-Appellant,

v.

TOWNSHIP OF KNOWLTON, MAYOR AND
COMMITTEE FOR THE TOWNSHIP OF
KNOWLTON, individually and in
their official capacities,
TOWNSHIP OF KNOWLTON PLANNING
BOARD, MEMBERS OF THE TOWNSHIP OF
KNOWLTON PLANNING BOARD, individually
and in their official capacities,
RENE MATHEZ, DAVID A. SMITH,
RONALD C. FARBER, FRANK VAN HORN,
GEORGE JAMES, CLAYTON TAYLOR,
MICHAEL TIRONI, DALE GLYNN,
HAL BROMM and HOWARD COWELL,

     Defendants-Respondents,

and

MARK J. HONTZ, ROGER THOMAS,
RICHARD P. CUSHING, HEYER, GRUEL
& ASSOCIATES, P.A., FRED HEYER and
PAUL N. RICCI,

     Defendants.

_____

        Submitted May 12, 2015 - Decided July 7, 2015

        Before Judges Reisner, Haas and Higbee.

        On appeal from the Superior Court of New
        Jersey, Law Division, Warren County, Docket
        Nos. L-125-10, L-151-13, and L-203-14, and
        Somerset County, Docket No. L-248-13.

        Claudia Casser, appellant pro se.

Robert J. Greenbaum, attorney for respondents in A-1815-13 and A-2127-14 Township of Knowlton, Mayor and Committee for Knowlton, Township of Knowlton Planning Board, Members of the Township of Knowlton Planning Board, Rene Mathez, David A. Smith, Ronald C. Farber, Clayton Taylor, Michael Tironi, Hal Bromm, and George James; respondents in A-1815-13 Scott Odorizzi and Carla Constantino; and respondents in A-2127-14 Frank Van Horn, Dale Glynn and Howard Cowell.

Thompson Becker & Bothwell, L.L.C., attorneys for respondents in A-1815-13 Maser Consulting, P.A. and Joseph J. Layton (Joseph T. Ciampoli, on the brief).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondent in A-1815-13 Mark J. Hontz (Craig J. Smith, on the brief).

Law Offices of Joseph Carolan, attorneys for respondent in A-1815-13 Ted Rodman (Mr. Carolan and George H. Sly, Jr., on the brief).

The opinion of the court was delivered by

SUSAN L. REISNER, P.J.A.D.

We have consolidated two appeals for purposes of this opinion. Appeal A-2127-14 concerns a 2010 complaint in which plaintiff Claudia Casser sought, on various theories, to challenge land use approvals that the Knowlton Township Planning Board issued to her in 2007. Appeal A-1815-13 (the companion appeal) concerns a complaint plaintiff filed on April 18, 2013, challenging land use approvals issued to two other landowners and challenging the validity of the local zoning ordinance.

We affirm in A-2127-14. We conclude that a party may not circumvent the exhaustion doctrine by waiting until it is too late to file the predicate action required for exhaustion, and then claiming that exhaustion would be "futile" because that action is time-barred. In A-1815-13, we remand to the trial court for further proceedings consistent with this opinion.

> **[At the direction of the court, Section I has been omitted from the published version of the opinion.]**

## II

Plaintiff's land use application concerned approximately 100 acres of land located in the Township's farmland preservation zone. In general, the zone permitted construction of houses on ten-acre lots. However, the zoning ordinance required that, on tracts of fifty acres or more, residences must be clustered, leaving at least fifty percent of the total land area as "open space." The latter term was defined as land "restricted to agriculture," open space restricted to use by residents of the development of which the open space was a part; or public open space. Instead of clustering the development on her land, plaintiff proposed to subdivide the land into three "farmettes" (small horse farms) of between eight and ten acres each, with a house on each farmette, plus one approximately

seventy-acre remainder parcel on which she proposed to maintain an existing house.

Plaintiff proposed to sell to the State the development rights on most of the remainder parcel, so that it would be permanently preserved for farmland use. However, she was unwilling to agree to deed restrict the remainder parcel as part of the variance application, since that would defeat her ability to sell the development rights. Instead, she proposed to satisfy the open space requirement by aggregating contiguous portions of land on the three farmettes and deed-restricting the farmettes for agricultural use.[1]

The Board conducted six days of public hearings on the variance application. Plaintiff, an attorney who previously sat on the Township Zoning Board, represented herself at most of the hearings. During the hearings, the application was modified so that plaintiff would create two relatively small farmettes of eight or nine acres each, one farmette of twenty-five acres, and a remainder parcel of fifty-seven acres. A portion of each of

---

[1] In the context of this application, the term "open space" clearly did not refer to publicly accessible space such as a public park or other recreation facility. See N.J. Shore Builders Ass'n v. Twp. of Jackson, 401 N.J. Super. 152, 155-56 (App. Div. 2008), aff'd o.b., 199 N.J. 449 (2009). Rather, as plaintiff herself acknowledges in her brief, the term referred to agricultural easements designed to ensure that the land would continue to be used for agricultural purposes.

the four lots was to be deed restricted for agricultural use, with a total of 49.971 acres in all to be deed restricted. Plaintiff would be entitled to develop the approximately 100-acre tract with a maximum of ten new houses, while also maintaining the existing house. On October 23, 2007, the Board granted all of the requested variances, including relief from the clustering requirement.

As part of the approvals, the Board required that the farmettes be deed-restricted against further subdivision, and the remainder lot be deed restricted against further subdivision resulting in more than seven resulting lots, or fewer than seven if the ordinance allowed fewer lots at the time of the future subdivision. Those conditions were required by the zoning ordinance.[2] In other words, plaintiff would be held to the representations she made at the time of the application, on which the Board relied in granting the variances. The restrictions ensured that neither plaintiff nor future purchasers could later seek variances for more intensive development of the land. As required by the zoning ordinance,

---

[2] The ordinance provided that: "The maximum tract density shall be established at the time of the initial application for development of a tract. This density shall not be exceeded in subsequent subdivisions. All lots shall include a deed restriction against further subdivision." Knowlton Twp. Land Dev. Ordinance § 11-297(D)(4).

the terms of the variance approvals also ensured that the designated portions of the land would continue to be used for agricultural purposes, as plaintiff's application had represented they would be. Knowlton Twp. Zoning Ordinance § 11-297 (C)(12)(a)(4).

Plaintiff did not file a complaint in lieu of prerogative writs challenging the October 23, 2007 resolution within forty-five days, as required by Rule 4:69-6(a). Instead she waited almost three years before asserting assorted claims aimed at undoing the resolution. On January 28, 2010, plaintiff wrote a letter to the Knowlton Township Committee, claiming that she was unable to sell the subdivided lots due to the real estate crash of 2008. Plaintiff also alleged that she only recently "came across" a June 25, 2009 opinion of the New Jersey Supreme Court, holding that municipalities had no authority to require public open space set-asides as a condition of granting minor subdivision approvals. See N.J. Shore Builders Ass'n, supra, 199 N.J. at 452, aff'g o.b., 401 N.J. Super. 152 (App. Div. 2008).[3] Plaintiff contended that the 2007 Planning Board resolution was ultra vires and demanded that the Township

---

[3] Plaintiff, an attorney and former zoning board member, did not mention the Appellate Division's published opinion issued on June 23, 2008.

compensate her "for the 50 acres the Planning Board illegally required [her] to set aside as Open Space."

On March 5, 2010, plaintiff filed a complaint against the Township, its mayor and Township Committee, the Planning Board, and various other municipal officials. Among other things, she contended that the Township had repeatedly "down-zoned" the area in which her land was located, until finally the zoning permitted one house per ten acres. She claimed that, when the Township adopted the 2003 zoning ordinance that governed her eventual variance application, she did not realize that the ordinance required set-asides of open space as a condition of subdividing tracts larger than fifty acres.[4] She also contended that she only recently learned, through requests under the Open Public Records Act (OPRA), that between 1993 and 2004, several other landowners in the Township had been granted subdivision approval without being required to set aside land for open space.

Plaintiff contended, under various legal theories, that Township officials had illegally sought to preserve open space in the Township at the sole expense of large landowners, who

---

[4] However, plaintiff's appendix contains the minutes of the public hearing at which the Township considered the 2003 ordinance; as plaintiff admits, she appeared at that hearing and testified against the proposed ordinance.

were required to contribute some of their land for preservation as a condition of being able to develop their property. Plaintiff alleged that the Township's actions constituted unlawful discrimination under the New Jersey Constitution and the New Jersey Civil Rights Act and an unconstitutional taking of private property.

Plaintiff also asserted that the defendants discriminated against her on the basis of her gender and her religion,[5] and retaliated against her for voting against "the 'old boys'" when she was a member of the Township's Zoning Board. Lastly, plaintiff asserted a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim against defendants, alleging that they illegally used their power to deprive her and others of their rights while seeking to benefit their own property values and granting favorable treatment to other landowners, and that they fraudulently concealed their activity by failing to provide her with information in response to her OPRA requests.

---

[5] Plaintiff's reply brief clarified that she has abandoned those claims.

On those theories, she asked the court to set aside the conditions of the 2007 resolution or require the Township to compensate her.[6]

### III

The case was assigned, in succession, to three different Law Division judges. On May 5, 2011, the first judge entered an order dismissing almost all of plaintiff's claims against a group of professionals who provided legal or consulting services to the Board. The only claim not dismissed concerned a count for fraudulent concealment of evidence which the court found could not be decided on a motion to dismiss. All of those entities and individuals later reached settlements with plaintiff and were dismissed from the case.

The Township, its officials and employees, and the Board and its members (collectively, the Township defendants) then moved for summary judgment as to all claims except fraudulent

---

[6] In a proposed amended complaint, and in her appellate brief, plaintiff admitted that she had sold the twenty-five acre parcel, which was one of the three subdivided farmettes; she contended that, as to those acres, a rescission of the variance conditions would not provide relief. In her proposed amended complaint, she asked for damages instead, without stating the sale price she obtained or how that price compared to what she claimed the State might have paid had she sold the development rights to the same land. Elsewhere in her pleadings, plaintiff contended that before applying for the variances, she offered to sell the development rights to the State for $10,000 per acre, but the State only offered about $6500 per acre and she therefore refused to sell.

concealment. In an oral opinion issued on August 31, 2011, the first judge dismissed counts five, six, seven, ten and twelve against the Township defendants without prejudice.[7] Relying on Rezem Family Associates, LP v. Borough of Millstone, 423 N.J. Super. 103 (App. Div.), certif. denied, 208 N.J. 368 (2011), the judge reasoned that plaintiff had failed to exhaust administrative and judicial remedies. The court also denied without prejudice plaintiff's cross-motion for summary judgment with respect to the variance conditions, because plaintiff had failed to challenge those conditions in an action in lieu of prerogative writs. On May 25, 2012, the first judge denied another summary judgment motion filed by defendants, largely on procedural grounds and because the parties' briefs did not adequately address certain issues. In particular, the judge noted that certain counts of the complaint might be construed as actions in lieu of prerogative writs, but the briefs did not address whether they were untimely under Rule 4:69-6(c) (permitting enlargement of the time limit in the interests of justice).

---

[7] These counts set forth the following claims: five (discriminatory application of ordinance), six (disproportionate burden on owners of certain lots), seven (unlawful discrimination against a protected class), ten (New Jersey Civil Rights Act) and twelve (New Jersey RICO).

The first judge subsequently recused herself and the case was transferred from Warren County to Somerset County, where it was assigned to a second judge. The Township defendants then filed another summary judgment motion. The motion was supported by an expert report from Charles McGroarty, a licensed professional planner, who explained in detail that the Board's resolution did not deprive plaintiff of the use of her property, because she retained the right to build ten houses on the land, in addition to the existing farmhouse.

The expert also reviewed and analyzed each of the land use applications in which plaintiff claimed other landowners were treated more favorably. McGroarty explained that, contrary to plaintiff's assertions, in all but two or three cases the applicants in fact set aside large amounts of their land for agricultural preservation. Plaintiff opposed the summary judgment motion, without filing an expert report. She also filed a motion to amend her complaint, seeking to add a claim in lieu of prerogative writs, and to re-plead the civil rights and RICO claims that the first judge had dismissed without prejudice.

On April 12, 2013, the second judge issued an order denying the motion to amend the complaint and granting defendants' summary judgment motion as to counts one through four, eight,

nine, and eleven.[8]   The order mistakenly noted that the first judge had dismissed all of the remaining counts on May 25, 2012; in fact, the first judge did not dismiss the fraudulent concealment count.

In a detailed thirteen-page written opinion, the second judge denied plaintiff's motion to file an action in lieu of prerogative writs.   He concluded that under Rule 4:69-6(a), plaintiff was required to file such an action within forty-five days after the date of the Board's resolution in 2007. Answering the question left open by the first judge, the second judge found that plaintiff did not establish any grounds to relax the time limit in the interests of justice, pursuant to Rule 4:69-6(c).   He also considered that discovery had ended and the case was scheduled for trial on June 3, 2013.

The second judge found no merit in plaintiff's claim that, merely by attempting to now plead her prerogative writ claim, however untimely it might be, she had exhausted her

---

[8] The counts are as follows: count one (exceeding the authority of the Municipal Land Use Law), count two (failure to proceed under N.J.S.A. 40:55D-44), count three (equitable estoppel or injunction), count four (request for declaratory judgment and reformation of Board resolution), count eight (improper taking without just compensation), count nine (inverse condemnation) and count eleven (reformation of irregularly configured lot boundaries).

administrative remedies and should be permitted to re-plead her civil rights claims. Relying on <u>Rezem</u>, <u>supra</u>, 423 <u>N.J. Super.</u> at 116-17, and <u>41 Maple Associates v. Common Council of Summit</u>, 276 <u>N.J. Super.</u> 613, 619-20 (App. Div. 1994), the judge reasoned that "[b]ecause Plaintiff did not file a timely prerogative writ action, she failed to exhaust her administrative remedies, and is now precluded from bringing her civil rights claims."

Addressing the summary judgment motion, the judge concluded that plaintiff waived her claims under counts one, two, three, four and eleven of her existing complaint when she failed to file a timely prerogative writ action. Relying on <u>Rezem</u>, the judge further concluded that plaintiff's unjustified failure to challenge the land use approvals in a prerogative writ action likewise barred her from pursuing her takings and inverse condemnation claims. The judge denied plaintiff's reconsideration motion on May 28 2013, for reasons set forth in an accompanying statement of reasons.

As previously noted, plaintiff appealed and we remanded the case to the trial court for the limited purpose of considering the fraudulent concealment claim. On remand, that issue was decided by a third judge,[9] who denied plaintiff's motion to amend

_____

[9] The third judge had previously considered and dismissed plaintiff's complaint in the second action she filed against
(continued)

14                                                          A-1815-13T4

her complaint, granted defendants' summary judgment motion, dismissed the fraudulent concealment claim, and dismissed the complaint against all then-remaining defendants.[10]

In a written statement of reasons, the third judge considered and rejected plaintiff's argument that she could assert an independent cause of action for the tort of fraudulent concealment of evidence. Relying on Rosenblit v. Zimmerman, 166 N.J. 391, 406-07 (2001), the judge reasoned that plaintiff had the documents before she filed the 2010 litigation. He found that she could not "show that she was damaged in the underlying litigation by having to rely on an evidential record that did not contain the evidence defendant concealed." He also found that that plaintiff could not show that defendants acted with "intent to withhold evidence" when they gave her "access to municipal vaults that contained the entirety of Knowlton Township's records." The judge further concluded that plaintiff's proposed amended complaint would not cure the fundamental defects in her claim. The judge denied plaintiff's

---

(continued)
most of the same defendants. That dismissal is the subject of plaintiff's appeal in A-1815-13.

[10] In adding a paragraph dismissing the complaint, the judge left no doubt that the trial court litigation was over and the case was ripe for appeal. Clearly, the dismissal was with prejudice.

reconsideration motion on November 12, 2014, finding that her motion presented "no new evidence" and "no new arguments."

                                    IV

Plaintiff then filed an appeal (A-2127-14) from the November 12, 2104 order and the various interlocutory orders that preceded it. Our review of the Law Division's summary judgment orders is de novo, employing the same standard used by the trial court. See Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Likewise, we owe no deference to a trial court's legal interpretations. D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013). We review a trial court's decision denying a reconsideration motion for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). We apply the same standard to the trial court's decision of a motion for leave to amend a complaint. See Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J. Super. 494, 506 (App. Div. 2003).

On this appeal, plaintiff contends that the 2003 ordinance should have been declared unlawful on its face. She argues that, if the ordinance were declared void, her "fact-intensive 'taking' Counts 8 and 9 disappear from the case." Her argument fails for several reasons.

First, as plaintiff acknowledges, on August 7, 2013, the Governor signed legislation that expanded municipal authority to enact ordinances concerning clustered development and the preservation of open space.  L. 2013, c. 106.  Also, in 2013, the Township amended the farmland preservation chapter of its zoning ordinance.  Among other things, the ordinance no longer requires clustering as a condition for minor subdivisions.  Consequently, the 2003 zoning ordinance is no longer the Township's most current applicable zoning ordinance, and a facial challenge to the 2003 ordinance would now be moot.  See Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 194 (3d Cir. 2001).

Second, plaintiff cannot circumvent the procedural barriers to her 2010 Law Division action by re-characterizing this litigation as a facial challenge to the 2003 ordinance.  The 2010 litigation sought relief from the terms of the Board resolution granting her the variances.  In the alternative, she sought money damages.  The second trial judge held that plaintiff was not entitled to either form of relief, on any of her assorted legal theories, because she failed to file a timely action in lieu of prerogative writs and that failure barred her from pursuing her other causes of action.  That ruling was

eminently correct, for the reasons stated by the judge in his written opinion.

In particular, we agree with the trial court that <u>Rezem</u> controls this case. In <u>Rezem</u>, the former owner of a large tract of land sued Millstone Borough and its land use board, claiming that the defendants violated the plaintiff's civil rights by making false statements, fraudulent claims and factual misstatements in an effort to keep the plaintiff's land as open space. <u>Rezem</u>, <u>supra</u>, 423 <u>N.J. Super.</u> at 108. After reciting a litany of alleged bad faith conduct by assorted public agencies, the plaintiff alleged that it was forced to sell the land to Somerset County at a much lower price than various potential developers would have paid. <u>Id.</u> at 111-12.

The plaintiff's complaint was similar to Casser's 2010 filing:

> The eight counts of plaintiff's complaint alleged: (count one) substantive due process violations under 42 <u>U.S.C.</u> § 1983; (count two) § 1983 conspiracy; (count three) temporary regulatory takings; (count four) substantive due process violations under the New Jersey Civil Rights Act, <u>N.J.S.A.</u> 10:6-1 and -2; (count five) negligence by the Van Dyke defendants; (count six) intentional tort by the Van Dyke defendants; (count seven) conspiracy; and (count eight) civil racketeering in violation of the New Jersey Civil Racketeer Influenced and Corrupt Organizations Act (NJRICO), <u>N.J.S.A.</u> 2C:41-1 to -6.

[<u>Id.</u> at 108.]

The trial court dismissed the complaint, and the plaintiff appealed. <u>Id.</u> at 109. Without deciding whether any of the defendants' alleged actions were sufficiently conscience-shocking to support a cause of action under § 1983 or the State Civil Rights Act, we agreed with the trial court "that Rezem's complaint must be dismissed because it contains no allegation that Rezem, or potential developers, exhausted available administrative <u>and judicial remedies</u>, or sought a final decision on any application for a zoning change or development of the land, before plaintiff filed this civil rights lawsuit." <u>Id.</u> at 116 (emphasis added).

In reaching that conclusion, we relied on a string of prior cases, including <u>41 Maple Associates</u>, <u>supra</u>, which held that the plaintiff's inverse condemnation and § 1983 claims were "not ripe for adjudication without a showing that the plaintiffs had attempted to remedy the deprivation of their land use rights through available administrative and judicial proceedings." <u>Rezem</u>, <u>supra</u>, 423 <u>N.J. Super.</u> at 116 (citing <u>41 Maple Assocs.</u>, <u>supra</u>, 276 <u>N.J. Super.</u> at 619-20); <u>see also</u> <u>OFP, LLC. v. State</u>, 395 <u>N.J. Super.</u> 571 (App. Div. 2007), <u>aff'd o.b.</u>, 197 <u>N.J.</u> 418 (2008); <u>House of Fire Christian Church v. Zoning Bd. of Adj. of Clifton</u>, 379 <u>N.J. Super.</u> 526 (App. Div. 2005).

19                                                      A-1815-13T4

In <u>Rezem</u>, we concluded that, by whatever theory the plaintiff asserted its claims, they were barred by the plaintiff's failure to pursue local administrative remedies followed by an action in lieu of prerogative writs:

> Whether we describe the applicable principle as exhaustion of remedies, ripeness of the claim, or the "finality rule," as defendants characterize it, we hold that plaintiff's substantive due process claims in a land use case require a showing either that plaintiff has obtained a final decision under available state procedures or that such an attempt would have been futile.
>
> . . . .
>
> In the absence of any attempt to make use of available procedures and remedies, Rezem's complaint improperly converts a zoning case into civil rights litigation. We reject that effort and affirm the trial court's dismissal of Rezem's § 1983 and State civil rights claims for lack of ripeness or of finality of defendants' zoning and planning decisions.
>
> [<u>Rezem</u>, <u>supra</u>, 423 <u>N.J. Super.</u> at 118-20.]

<u>Rezem</u> is on point here. Contrary to plaintiff's argument, <u>Rezem</u> did not establish a new principle of law, and there is no reason to apply the case prospectively only. We also find no merit in plaintiff's claim that a prerogative writ remedy is "futile" or "unavailable" for purposes of the exhaustion doctrine.

The problem plaintiff faces here is of her own making. She is an attorney and a former zoning board member. If she wanted to challenge the terms of the variance granted her by the Planning Board, she had forty-five days in which to file an action in lieu of prerogative writs. She makes no claim here that she was unaware of the deadline set by Rule 4:69-6(a). Instead she waited three years to file this lawsuit, and her complaint would have been untimely even if one or more of the counts were deemed as a prerogative writ challenge. Her proposed amended complaint was even more untimely.

Plaintiff may not circumvent the exhaustion requirement by waiting until it is years too late to file a prerogative writ action, and then claiming that she need not exhaust remedies because that action is time-barred. Allowing her to proceed in that fashion would make a mockery of the exhaustion doctrine, and would defeat "the important policy of repose expressed in the forty-five day" time limit set by Rule 4:69-6(a). Rocky Hill Citizens for Responsible Growth v. Planning Bd. of Rocky Hill, 406 N.J. Super. 384, 398 (App. Div. 2009) (citation and internal quotation marks omitted). Indeed, "[b]ecause of the importance of stability and finality to public actions, courts do not routinely grant an enlargement of time to file an action in lieu of prerogative writs," and "[t]he longer a party waits

to mount its challenge, the less it may be entitled to an enlargement." Tri-State Ship Repair & Dry Dock Co. v. City of Perth Amboy, 349 N.J. Super. 418, 423-24 (App. Div.) (citations omitted), certif. denied, 174 N.J. 189 (2002).

Further, we agree with the trial court that the interests of justice do not warrant relaxing the forty-five day time limit under Rule 4:69-6(c). The record reflects that plaintiff was not deprived of the right to develop or sell her land. To the contrary, she owned about 100 acres of land subject to ten-acre zoning; the Board's decision safeguarded her right to subdivide the land and build ten houses. She has already sold the twenty-five acre subdivided lot. The fact that the variance terms may have prevented her from also selling development rights to the State does not give rise to a takings cause of action. See Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 298 (2001) (noting, in a zoning context, that "neither diminution of land value itself nor impairment of the marketability of land alone constitutes a taking"), cert. denied, 535 U.S. 1077, 122 S. Ct. 1959, 152 L. Ed. 2d 1020 (2002). Finally, defendants' expert report thoroughly debunked plaintiff's theory that many other landowners were treated more favorably than she was.

A-1815-13T4

Plaintiff's additional arguments on this appeal are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).  We affirm the orders on appeal in A-2127-14.

> **[At the direction of the court, Section V has been omitted from the published version of the opinion.]**

Affirmed in A-2127-14.  Remanded in A-1815-13.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION