**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2099-18T3

IN RE INSTALLATION OF
"WIPEOUT" BY EVERMORE
FITNESS LLC AT SKY ZONE
TRAMPOLINE PARK.

_____

Submitted March 26, 2020 – Decided May 5, 2020

Before Judges Suter and DeAlmeida.

On appeal from the New Jersey Department of Community Affairs.

Daniel Michael Baker, attorney for appellant Evermore Fitness LLC.

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Community Affairs (Sookie Bae-Park, Assistant Attorney General, and Dominic Larue Giova, Deputy Attorney General, on the brief).

PER CURIAM

Evermore Fitness LLC (Evermore) appeals the December 24, 2018 final

decision by the Commissioner of the Department of Community Affairs

(Commissioner), which determined the "Wipeout" feature that Evermore wanted

to install on trampolines at its Sky Zone Trampoline Park constituted a "carnival-amusement ride" pursuant to N.J.S.A. 5:3-32(a) and N.J.A.C. 5:14A-1.2, and is subject to regulation by the Department of Community Affairs (DCA). The Commissioner denied Evermore's request for an administrative hearing, citing a lack of disputed factual issues. We affirm.

## I.

Evermore operates a Sky Zone Trampoline Park (Park) franchise in South Plainfield. It purchased a feature named "Wipeout" to be installed on certain specially designed trampolines in the Park. On December 5, 2018, Evermore wrote to DCA's Carnival and Amusement Ride Plan Review Unit (Unit), asking whether Wipeout was an "amusement ride" requiring regulatory review or approval under N.J.A.C. 5:14A-1.2. Evermore described the Wipeout feature as

> a trampoline attraction with two rotating arms, one low arm that the customer jumps over and one higher arm that the customer ducks under. The two arms are given structure with sealed air—there is no bar in the middle of the arms. The arms are rotated by a small motor. The arms stop moving if someone touches them.

Evermore's letter explained why it did not consider Wipeout to be a carnival-amusement ride under the regulations.

A-2099-18T3

The next day, Michael D. Triplett, Unit supervisor, wrote to Evermore, advising that Wipeout would be classified as a carnival-amusement ride under the Carnival-Amusement Rides Safety Act (Safety Act), N.J.S.A. 5:3-31 to -59. Shortly afterwards, Evermore requested an administrative hearing.

In the Commissioner's December 24, 2018 final decision, she determined the Wipeout feature constituted a carnival-amusement ride under the Safety Act. It met the definition because use of its "rotating hub and arm assembly at the center of the trampolines is . . . a mechanical device which will on occasion support or contact patrons . . . ." The people on the trampolines are "in a restricted area defined by the area of the trampolines and . . . the netting . . . ." Also, the "purpose of the activity is . . . for the amusement or pleasure of the patrons." The Commissioner noted DCA regulated similar rides "where the surface used by the patrons is an inflatable 'bounce' rather than a trampoline" and that Wipeout posed "hazards" that were "sufficiently similar" requiring DCA to treat this in the same manner. The Commissioner denied Evermore's request for an evidentiary fact-finding hearing because there were "no issues of disputed fact requiring such a hearing[,]" concluding that only a legal question was raised.

A-2099-18T3

On appeal, Evermore contends the Commissioner erred by determining the Wipeout feature satisfied the definition of a carnival-amusement ride under the Safety Act. It argues the Commissioner was incorrect in finding Wipeout should be regulated in a manner similar to inflatable devices. Evermore claims the final decision could have the effect of subjecting every trampoline in the Park to DCA regulation.

## II.

The scope of our review in an appeal from a final decision of an administrative agency is limited. Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld unless there is a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). "Because '[t]he grant of authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals,' we defer to '[t]he agency's interpretation . . . provided it is not plainly unreasonable.'" In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384 (2001) (alterations in original) (first quoting Gloucester Cty. Welfare Bd. v. State Civil Serv. Comm'n, 93 N.J. 384, 390 (1983); then quoting Merin v. Maglaki, 126 N.J. 430, 437 (1992)).

4                                                      A-2099-18T3

"We also extend substantial deference to an agency's interpretation of its own regulations, reasoning that 'the agency that drafted and promulgated the rule should know the meaning of that rule.'"  In re Thomas Orban/Square Props., LLC, 461 N.J. Super. 57, 72 (App. Div. 2019) (quoting In re Freshwater Wetlands Gen. Permit No. 16, 379 N.J. Super. 331, 341-42 (App. Div. 2005)). That said, however, "an agency may not use its power to interpret its own regulations as a means of amending those regulations or adopting new regulations." Ibid. (quoting Freshwater, 379 N.J. Super. at 342).

The Safety Act and regulations promulgated pursuant to it, "set forth an administrative framework for ensuring the safety of those attending carnivals and amusement parks, including water parks, in New Jersey."  Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 360 (2016).  DCA is the agency "charged with the responsibility of enforcing the Safety Act and the regulations promulgated pursuant to the Act."  Ibid. (citing N.J.S.A. 5:3-38).  The Safety Act "articulate[s] legislative and regulatory standards of conduct intended to protect members of the public who patronize amusement parks . . . ." Id. at 361.

Under the Safety Act, a carnival-amusement ride

> means any mechanical device or devices, including but
> not limited to water slides exceeding [fifteen] feet in
> height, which carry or convey passengers along,
> around, or over a fixed or restricted route or course for

5

the purpose of giving its passengers amusement, pleasure, thrills or excitement; and any passenger or gravity propelled ride when located in an amusement area or park in which there are other rides covered by P.L.1975, c. 105 (C. 5:3-31 et seq.); provided, however, that this shall not include locomotives weighing more than seven tons, operating on a track the length of which is one-half mile or greater, the gauge of which is three feet or greater, and the weight of which is at least [sixty] pounds per yard.

[N.J.S.A. 5:3-32(a).]

DCA's regulations define carnival-amusement ride in a manner consistent with this statute. See N.J.A.C. 5:14A-1.2. Therefore, there are three requirements for a carnival-amusement ride: it must be a "mechanical device;" it has to "carry or convey passengers along, around, or over a fixed or restricted route or course" and the purpose of the ride must be to give "its passengers amusement, pleasure, thrills, or excitement." N.J.S.A. 5:3-32(a)

Neither party disputed the Commissioner's finding that the Wipeout feature is a mechanical device within the meaning of the Safety Act and regulations or that the feature is for the "purpose of giving its passengers amusement, pleasure, thrills or excitement." N.J.S.A. 5:3-32(a). Neither party disputes that the term "passenger" as used in Safety Act encompasses both a "patron" of the Park and a "rider."

6

Evermore argues the Wipeout feature does not convey passengers along a fixed route; instead, patrons simply jump in place on the trampoline, trying to avoid inflated arms that are rotating.

The Commissioner did not expressly state in the final decision that the Wipeout feature was to "carry or convey" passengers. She found that the Wipeout feature met the definition because use of its "rotating hub and arm assembly at the center of the trampolines is . . . a mechanical device which will on occasion support or contact patrons . . . ."

Neither the statute nor the regulations define the terms "carry or convey." The legislative history does not provide assistance in defining these terms.

In construing a statute, "[w]e apply to the statutory terms the generally accepted meaning of the words used by the Legislature." Patel v N.J. Motor Vehicle Com'n, 200 N.J. 413, 418 (2009). The term to "carry" generally means "[t]o sustain the weight or burden of; to hold or bear . . . [or] [t]o convey or transport." Black's Law Dictionary 257 (10th ed. 2014). To convey can mean "[t]o transfer or deliver . . . ." Id. at 407. The Commissioner found the Wipeout feature could "support" patrons, which could mean to carry them in a general sense, and that it made "contact" with patrons, which in many cases "conveyed" patrons to the ground by knocking them down. Therefore, the final decision was

A-2099-18T3

not arbitrary, capricious or unreasonable because the Commissioner found this portion of the statute was satisfied.

The statute and regulations also state the ride carries or conveys passengers "along, around, or over a fixed or restricted route or course." N.J.S.A. 5:3-32(a); see N.J.A.C. 5:14A-1.2. The Commissioner's finding that the passengers are in a "restricted" area found support in the record because the trampolines were surrounded by netting that restricted the course.

Evermore argues the Commissioner erred in determining the Wipeout feature needed to be regulated in the same manner as a similar type of feature on an inflatable. Inflatables are subject to DCA regulations. See N.J.A.C. 5:14A-13.1 to –13.15. "[T]ype [four]" inflatables are inflated by a mechanical device and "[a]re intended to be occupied or ridden by the public; and . . . the public enters or mounts." N.J.A.C. 5:14A-13.2(a)(4). They are "considered amusement rides, regardless of their location . . . ." N.J.A.C. 5:14A-13.2(b).

The Commissioner did not find that Wipeout needed to be regulated like inflatables only that the DCA did regulate certain types of inflatables as amusement rides where the public occupied or rode the inflatable, and it was inflated by a mechanical device. The Commissioner was simply pointing out that other similar features are regulated. "[R]egulations within the same

regulatory scheme should, where feasible, be read as consistent with each other." Czar, Inc. v. Heath, 398 N.J. Super. 133, 139 (App. Div. 2008) (quoting Van Orman v. Am. Ins. Co., 608 F. Supp. 13 (D.N.J. 1984)).

Evermore argues the final decision will lead to the regulation of trampolines in the Park. "[I]t is well settled that we will not render advisory opinions or function in the abstract." Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301 (App. Div. 2005) (citing Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107 (1971)). We offer no opinion on this issue nor should this opinion be construed as suggesting any such opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2099-18T3